# Resolution Of Approval

## Final Subdivision

## Site Plan

## Special Exception Use Permit

## Local Wetlands Disturbance Permit

## For

## Henry Farms Realty Subdivision

## [Highview Properties D.H.F., Inc.]

---

### Nature of Application

Henry Farms Realty Subdivision has applied for Subdivision approval, Site Plan and Special Exception Use approval, Site Plan approval and for issuance of a Local Wetlands Disturbance Permit allowing it to create 75 new Parcels of land on a ±134.1 acre tract, including 65 residential single family detached lots (on a clustered basis) as well as an age-restricted (age 55 and older) multiple dwelling group containing 50 townhouse units in twelve buildings on three lots, together with six lots to be dedicated to the town or a land trust and one commercial lot (for potential future use).

A portion of the site (approximately 4.2 acres) zoned NB (Neighborhood Business) was analyzed in the DEIS for use as a 15,000 square-foot of retail/office building although no site plan approval is being sought for this use at this time. The project also includes the offering for dedication of a 0.83-acre parcel to the Town of Monroe for recreational purposes, the reservation of deed restricted

open space lands totaling over 83 acres, and construction of a water supply system and other necessary internal infrastructure to be dedicated to the town.

## Property Involved

The property affected by this resolution is shown on the Tax Maps of the Town of Monroe as parcel(s) 29–1–29.52. and is commonly referred to as Henry Farms Realty Subdivision Subdivision.

## Zoning District

The property affected by this resolution is located in the SR-20 and RR-1.5 zoning district of the Town of Monroe.

## Plans

The Subdivision Plat materials being considered consist of the following:

1. Completed application form and Environmental Assessment Form.

2. Plans prepared for Henry Farms Realty Subdivision as follows:

| Author | Title | Last Revision Date |
| --- | --- | --- |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Cover Sheet | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Existing Conditions | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Subdivision Plan | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Utility Plan (1) | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Utility Plan (2) | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Grading Plan (1) | March 2, 2015 |
| Pietrzak & Pfau Engineering and | Grading Plan (2) | March 2, 2015 |

| | | |
|---|---|---|
| Surveying, PLLC | | |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Roadway Construction Phasing Plan | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Erosion Control Plan and Roadway Construction | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Erosion Control Plan Lot Construction | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Lots 1-4, Water Tower and Force Main Plan | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Profiles (1) | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Profiles (2) | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Profiles (3) | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Site Details | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Water System Details | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Sanitary Sewer Details and Water Connection Details | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Detention/Treatment Pond Details | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Detention/Treatment Pond Details Outlet Structure Details | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Guide Railing Details | March 2, 2015 |
| Pietrzak & Pfau Engineering and Surveying, PLLC | Street Tree Plan | March 2, 2015 |

## History

### *Date of Application*

The original application was filed with the Planning Board on May, 2000. Preliminary subdivision approval was granted on June 8, 2004.

### *Public Hearing*

Public hearings on this application were held on February 4, 2003 and again on November 10, 2009, closing on December 8, 2009.

### *SEQRA*

#### Type of Action:

This matter constitutes an unlisted action under the State Environmental Quality Review Act.

#### Lead Agency:

The Town of Monroe Planning Board is the lead agency in regard to this action. The Planning Board's status as lead agency was established on August 19, 2000.

#### Declaration of Significance:

A positive declaration was issued on September 19, 2000. A final DEIS scoping outline was adopted in March of 2002.

#### EIS Procedures:

A DEIS was prepared by the applicant and accepted as complete on December 10, 2002.

The Planning Board filed an FEIS on February 13, 2004.

The Planning Board issued its Lead Agency SEQRA Findings Statement on May 4, 2004.

## GML 239 Referral

This application is not required to be referred to the Orange County Planning Department for review.

## Findings

The Planning Board has determined that approval of this final subdivision will substantially serve the public convenience, safety and welfare in that the land to be subdivided is of such character that it can be used safely for building purposes without danger to health or peril from fire, flood or other menace. Further, the arrangement, location and width of streets, their relation to the topography of the land, water supply, sewage disposal, drainage, lot sizes and arrangement, the possible future development of adjoining land as yet un-subdivided are all appropriate and consistent with the requirements of the master plan, the official map, the Town of Monroe Subdivision Regulations and applicable zoning regulations, subject to compliance in full with conditions hereinafter imposed.

The Planning Board further determines that issuance of a special exception use permit for an age-restricted (age 55 and older) multiple dwelling group containing [57-13(D)] 50 townhouse units is authorized and appropriate because:

- The location of the buildings and the general character of the development are compatible with their surroundings.
- The maximum building height does not exceed 35 feet or 2 1/2 stories.
- The minimum lot area is 160,000 square feet.
- The minimum lot area per family is 4,350 square feet.
- The minimum lot width of the principal street frontage is 300 feet.
- The maximum lot coverage is 40%.
- No building is proposed to be erected nearer than 60 feet to any property line, with the exception of Townhouses or patio homes on individual lots which shall be located at least 25 feet from interior front and rear lot lines and 15 feet from side lot lines. This requirement shall not prevent the common walls of attached dwellings from being located on a property line nor from preventing one side wall of a patio home from being located on a lot line.

- The community sanitary plant and community water supply plant are adequate to serve the development.
- There is adequate provision of space between buildings and of setbacks from driveways so as to assure ample light, air and privacy, in the interests of public health, safety and general welfare.
- The distance between any two buildings is not less than the height of the higher of such two buildings.

The Planning Board further determines that issuance of the proposed local wetland buffer disturbance permit to this applicant will not impair the functions of the wetland located on this project site within the meaning of Section 56-7 (E)(2) of the Town of Monroe Code, will not result in any direct or indirect environmental impact on wetlands and/or wetland buffers, will not impact wetlands functions, and will adequately protect surface water and groundwater resources from drought, pollution, and overuse.

## Public Improvements

A number of improvements have been identified on the plans as necessary public improvements. Given the complexity and magnitude of this application, these improvements shall be completed according to the schedule set forth in a Public Improvement Security Agreement [See §A65-25.3]:

## Resolution of Approval

NOW, THEREFORE, THE PLANNING BOARD RESOLVES to approve the final subdivision, site plan and special exception use permit application of Henry Farms Realty Subdivision as said proposal is depicted on the plans identified above and upon the conditions outlined below, and the Chairwoman (or her designee) is authorized to sign the plat upon satisfaction of those conditions below noted to be conditions precedent to such signing.

AND, THE PLANNING BOARD RESOLVES to approve the local wetlands permit application of Henry Farms Realty Subdivision as said proposal is depicted on the plans identified above and upon the conditions outlined below, and the Chairwoman (or her designee) is authorized to sign the plat upon satisfaction

of those conditions below noted to be conditions precedent to such signing.

## Specific Conditions

1. The plans shall not be signed until receipt of a letter from the Planning Board Engineer certifying that a revised tree plan (with plan detail showing a 6-foot fence, raised 18 inches around the water tower) has been submitted and been found consistent with the recommendations of the planning board.

### Conservation Easement

2. Under the proposed plan, approximately 83.25 acres of wooded open space within the Henry Farms Realty Subdivision property will be offered for dedication to the town or to a conservation organization and reserved forever as open space area. The open space land will provide passive recreational opportunities to residents of this area including future Henry Farms Realty Subdivision residents.

3. Before the plans are signed the applicant shall deliver to the town and/or a qualifying land trust a conservation easement placing restrictions on the future use and development of the *Open Space* areas of the land now being subdivided (as shown on the plat as being subject to the easement). A metes and bounds description of the areas encumbered by the conservation easement has been made a part of the easement document. The conservation easement shall run to the Town or a qualifying land trust and shall authorize whichever of those grantees accepts the conservation easement to enter onto the lands of the applicant for the purpose of enforcing the terms of the easement. The final plat shall not be signed until the conservation easement document has been finally approved by

whichever of those grantees accepts the conservation easement. The restrictions of the conservation easement are hereby made conditions of this approval.

4. Should both grantees decline to execute the conservation easement, the applicant shall deliver to the Planning Board a declaration of restrictive covenant carrying the same limitations on clearing as set forth above. The obligation set forth in the instrument shall be in form suitable for recording (and recite that the obligation set forth shall run with the land) and shall be satisfactory in form to the Planning Board Attorney. The final plat shall not be signed until this declaration of restrictive covenant instrument has been submitted and approved.

### Final Plan Details

5. The following plan revisions shall be made prior to any final plat approval:

    - A sidewalk network is shown running from the senior housing units to the neighborhood business parcel. These sidewalks are shown on only one side of the driveway through the Multiple Dwelling Group parcels, and along one side of the proposed town roadway leading to the business district. This configuration is satisfactory to the Planning Board. Unless waived by the Town Board, the final plan set shall also show sidewalks on one side of all streets in the subdivision. The detailed layout and location of the sidewalks shall be reviewed and approved by the Town Engineer before the plans are signed..

### Other Agency Approvals

6. This approval is subject to and conditioned upon delivery of written approval by the Orange County Department of Health [off-site water main extension for High View Road].

### Cluster Approval

7. The cluster subdivision promotes flexibility of design and development of land and constitutes the most appropriate use of land and facilitates, the adequate and economical provision of streets and utilities and preserves the natural and scenic qualities of open land. Therefore, under the authority granted by the Town Board [See A65-2(B)], the planning board finds that approving this subdivision on a clustered basis is appropriate. Moreover, the Planning Board hereby modifies all applicable bulk table provisions of Chapter 57 [Zoning] and replaces those provision with the "Cluster Subdivision Bulk Table" shown on the plans.

### Drainage

8. This approval relies upon a drainage study or other evaluations by the Planning Board based upon the house/structure sizes shown on the plat. No building permit for a house/structure larger than as shown on the plat will be issued unless a new drainage study, satisfactory to the planning board engineer, has been submitted and approved.

### Local Wetlands Permit

9. The local wetlands permit is granted, subject to the following requirements and limitations imposed under authority of Section 56-7(F) of the Code of the Town of Monroe:
    ➢ Compliance with all erosion control measures as shown on the plans.

> ➢ Installation of Carsonite markers along the northeaster side of lots eight through thirteen.

10. The dry swales, and rain gardens shown on the plans shall be preserved and properly maintained at all times. The Building Inspector shall give a notice to this effect at the time a building permit is issued.

11. The applicant shall deliver to the Town an easement authorizing entry onto each lot that includes a dry swale, or rain gardens. The easement shall run to the Town, shall be in form suitable for recording and shall be satisfactory to the Town Attorney. The easement shall authorize the Town to enter onto the each said lot in order to repair and maintain the drainage or infiltration facilities located there but shall not compel that such maintenance or repair be conducted by the Town.

<u>Public Improvement Security Agreement</u>

12. The Applicant shall execute a Public Improvement Security Agreement in a form acceptable to the Town Board of the Town of Monroe, said Agreement to be prepared by the Town Attorney at the Applicant's expense. The agreement shall ensure completion and maintenance of all public improvements identified above.

13. The Applicant shall furnish performance bonds and maintenance guaranties pursuant to the terms of the Public Improvement Security Agreement, the amounts of same to be determined in accordance with and upon consultation with the Town of Monroe Engineer.

14. The Applicant shall complete all improvements required by the terms of the Public Improvement Security Agreement, and in compliance with the development application proceedings and

all testimony and evidence submitted by and on behalf of the Applicant. The applicant shall further comply with all requirements of the Town of Monroe Code and other requirements that may be imposed by the Town of Monroe Engineer.

### Offers of Dedication

15. Before signing of the final plat or plans, the applicant shall deliver appropriate offer(s) of dedication, in duplicate, executed and acknowledged by the owner of the property affected, in form suitable for filing in the Orange County Clerk's Office and the Town Clerk's Office for all such lands as are shown on the plans to be so offered. The offer shall include a metes and bounds description of said parcel(s). The documents shall be in form suitable for recording and shall be satisfactory to the Town Attorney.

16. More specifically, the applicant will, as offered, dedicate 0.83 acres to the Town for recreational purposes. This land, located in the southwest corner of the site, will enhance the existing recreational opportunities adjacent to the site. This land will be combined, upon dedication, with Tax Lot 37-1-2.2 that is owned by the Town of Monroe. Additionally, the applicant will convey the wells shown on the plans to the town, outright, as part of the facilities for Town Water District No 5, following construction of the water system for the Subdivision.

17. Prior to any certificate of occupancy granted for construction on this site applicant will construct a water storage tank sufficient to supply one day domestic storage for 220 units plus the required flow volume to supply a two-hour flow for the highest fire flow required by the three classifications of site usage (single

family dwellings, multiple dwellings, or commercial) in accordance with Insurance Services Office, Inc. (ISO) latest standards and install an adequate water main from the project site in the bed of Highview Road to School Road. The applicant will also provide a reasonable contribution to fund the construction of an off-site pump station needed by the Town to supply the Carol Drive area. The amount of contribution shall be negotiated with the Town Board.

### Parkland Fees

18. The Planning Board has determined, based upon the present and anticipated future need for park and recreational facilities in the Town [as calculated from projected population growth to which this subdivision will contribute], that parklands should be created as a condition of approval of this subdivision. However, because parks of size adequate to meet the Town's requirements cannot be properly located on the subdivision plat, the Planning Board, pursuant to the Subdivision Regulations of the Town of Monroe, and Section 277 (4) of the Town Law of the State of New York, requires that the applicant deliver payment, by cashier's check or certified check drawn to the order of the Town of Monroe in such sum as required by the applicable provisions of the Town of Monroe Code of Ordinances, or such sum as the Town Board shall determine for each new dwelling unit in this subdivision in lieu of dedication of such required parklands to the Town before the final plat is signed, unless payment shall be deferred, in whole or part, by agreement between the applicant and the Town Board.

## General Conditions

This approval is conditioned upon the applicant submitting all necessary

copies of the plans to be signed, including mylars when required, to the Town of Monroe Building Department within one hundred eighty days of the date of this approval.

This approval is further conditioned upon the applicant delivering (prior to signing of the plat) proof, in writing, that all fees—engineering, planning, legal and otherwise—in regard to this project have been fully paid.

Before signing of the Final Plat, the applicant shall deliver appropriate offer(s) of dedication, in duplicate, executed and acknowledged by the owner of the property affected, in form suitable for filing in the Orange County Clerk's Office and the Town Clerk's Office for all such lands as are shown on the plat to be so offered. The offer shall include a *metes and bounds* description of said parcel(s).

A FAILURE to comply with any such condition in a timely manner shall result, without further action, in a lapsing of this approval.

Jerome O'Connell offered the foregoing resolution and moved its adoption. Richard Troiano seconded its adoption. The resolution was duly put to a vote on roll call vote as follows:

|  | Aye | Nay | Abstain | Absent |
|---|---|---|---|---|
| Chairwoman Elisa Tutini | X |  |  |  |
| Member Gary Abrignani | X |  |  |  |
| Member Audra Schwartz | X |  |  |  |
| Member Jerome O'Connell | X |  |  |  |
| Member Richard Troiano | X |  |  |  |

| Member Lisa McQuade | X | | | |
|---|---|---|---|---|
| Member Patrice Francois | X | | | |

Dated: April 14, 2015

ELISA TUTINI, CHAIRWOMAN
TOWN OF MONROE PLANNING BOARD

STATE OF NEW YORK   )
                    )ss:
COUNTY OF ORANGE    )

    I, Mary Ellen Beams, Clerk of the Town of Monroe, do hereby certify that the within Resolution is a true and exact copy of a Resolution issued by the Town of Monroe Planning Board, said resolution resulting from a vote having been taken by the Planning Board at a meeting of said board held on April 14, 2015. This resolution was filed in the Office of the Town Clerk on April 15, 2015.

                                              MARY ELLEN BEAMS, Clerk
                                              TOWN OF MONROE

O:\MHD\LAND-USE\Resolutions\Henry Farms Subdivision Resolution.docx

TMPB: Henry Farms: 2003.0006