# Dechert
LLP

## RECEIVED

### APR - 4 2016

**Town of Monroe
Town Clerk's Office**

1095 Avenue of the Americas
New York, NY  10036-6797
+1  212  698  3500  Main
+1  212  698  3599  Fax
www.dechert.com

STEVEN A. ENGEL

steven.engel@dechert.com
+1 212 698 3693  Direct
+1 212 698 3599  Fax

## VIA ELECTRONIC MAIL

April 4, 2016

Dennis E. A. Lynch, Esq.
Monroe Town Attorney
Feerick Lynch MacCartney & Nugent
96 South Broadway
South Nyack, New York 10960

Re:  Town of Monroe April 4, 2016 Hearing – Building Moratorium

Dear Mr. Lynch:

I write on behalf of concerned members of the Hasidic Jewish community and developers in the Town of Monroe. Many of the developers' properties have received final or preliminary site plan approval. Many are, or are nearly, shovel ready. Nonetheless, the Town Board has threatened those developments' future by proposing a building moratorium that targets them. The plain purpose of this moratorium is to prevent Hasidic Jews from moving into the Town of Monroe. As discussed below, such an ordinance would be unlawful and would leave our clients with no alternative but to commence litigation.

My clients have strong objections to the proposed Moratorium on the Development of Residential Property, which the Town Board will discuss at its April 4, 2016 hearing. Specifically, the contemplated moratorium, which proposes the suspension of processing of all building permits, preliminary or final site plan approvals, subdivisions, special permits, variances, or other land use applications or permits—whether new or pending—will subject the developers to significant financial damage.

In addition to causing our clients substantial harm, the proposed moratorium appears to be based, not upon legitimate considerations, but upon clear and documented discriminatory animus. Should the Town Board go forward with the moratorium and fail to accommodate previously approved developments, our clients are prepared to pursue all legal avenues necessary to vindicate their rights, including a federal action under the civil rights laws. Such an action would expose the Town of Monroe and its officials to substantial liability based upon the millions of dollars in harm that the discriminatory moratorium would cause. We write to put the Town Board on notice of these claims and to urge that the Town Board reconsider its position.



Dennis E. A. Lynch, Esq.
April 4, 2016
Page 2

## I.     The Proposed Moratorium Reflects Pervasive Religious Discrimination

The Town Board has not proposed this moratorium in a vacuum. Rather, the Town Board has proposed it only against a backdrop of numerous statements by Town officials, who have expressed the desire to confine the Village of Kiryas Joel to its current boundaries and to exclude Hasidic Jews from moving into the Town of Monroe. Town officials and members of the community have repeatedly made statements demonstrating that the current proposal is motivated by anti-Hasidic intent. *See United States v. Yonkers Board of Educ.*, 837 F.2d 1181, 1221 (2d Cir. 1987) (discriminatory intent may be established by "contemporary statements by members of the decisionmaking body"); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 595 (S.D.N.Y. 2013) (village did not show interest in passing additional requirements for higher education institutions "[u]ntil rumors of the rabbinical college surfaced . . . . Moreover, Plaintiffs allege that public comments preceding the enactment of the . . . challenged ordinances . . . strongly suggest animosity toward the Orthodox and Hasidic Jewish sects of the Jewish religion"); *see also United States v. City of Black Jack*, 508 F.2d 1179 (8th Cir. 1974) (*prima facie* case based upon discriminatory remarks made by movement's leaders at public meetings, together with people cheering in response to those remarks); *Support Ministries for Persons with AIDS, Inc. v. Village of Waterford, N.Y.*, 808 F. Supp. 120, 134 (N.D.N.Y. 1992) (where "an official act is performed simply in order to appease the discriminatory viewpoints of private parties, that act itself becomes tainted with discriminatory intent even if the decision maker personally has no strong views on the matter.").

At the November 16, 2015 Town Board Meeting, Councilman McQuade observed, "[w]hen I was over in KJ when we voted over the annexation . . . my decision to allow the annexation, my *decision let's let KJ stay over in KJ, out of our schools*, and prevents East Ramapo." The Town Board has repeatedly recognized that the pending developments at issue are lawful and "above board," yet in response, members of the community shouted, "[t]here are vans of Hasids looking at those houses . . . *I don't want Hasids in my back yard! They're right there, the vans of Hasids*. . . . all they have to do is buy a temple . . . they're taking over." The commenters continued, asking, "So the Hasids aren't going to move in there?" and "Who are the Hasids there? Why are they there?" The crowd continued, "*I just don't want Hasids in my backyard!*"

Town Supervisor Harley Doles has also made numerous statements confirming the Town's intent of preventing the encroachment of developments that would attract Hasidic Jews to Monroe. For instance:

- "Originally it was thought that it might be an idea for tourism, but when we heard that it was being reinterpreted as some kind of agreement to be able to have the Hasids proliferate in these hotels . . . ."



- "To take some of the builders and their absolutely inventive ways of taking single family RR1 Properties and turning them into . . . *futuristic housing of Kiryas Joel*. And what you see behind us is a good example; it's been up there all night long. These *KJ lifestyle developments* . . . This is what some people are planning as the future of housing in the Town of Monroe. And it's not going to be just in the 507. It's going to be outside of the 507 . . . whenever some developer decides, complements of whoever it is out there . . . to suck up to whoever they have to suck up to . . . that's going to be the reality. So what you're looking at folks, that's your new Monroe. Whether you like it or not, if we don't change the laws now, it's there now *and there are going to be more of them*."

- "Someone is saying that they're being manipulated right now, *that [pointing at photo of Hasidic home] is manipulation*!"

- "What about a one-family house that is somehow turned into *a twelve family disaster*."

The Town Board plainly shares the community's desire to keep Hasidic Jews out of their backyard. The remarks concerning "KJ lifestyle developments" and prejudicial assumptions concerning large-family units do not relate to anything other than a bias against housing catered to the Hasidic community. The Town's goal of preventing Hasidic families from "*proliferating*" in Monroe could not be clearer.

This theme continued at the March 21, 2016 Town Board Meeting. There, Supervisor Doles stated, "Kiryas Joel has had 30 or 40 years to—I use the term—*plot their growth*. I don't say it in a deceptive way, to plot their growth, and you think 90 days is going to make any difference? Does anyone think that 90 days is going to make any difference?" The Supervisor pointed to Ramapo as a warning and remarked that "*one KJ is enough*." Other community members similarly expressed disdain for the Hasidic community: "The reason behind the rhetoric is to get everyone really scared . . . into thinking that not having the annexation is going to be worse . . . . That's like institutionalized blockbusting and it's a terrible threat to make that you're just going to come in and take over . . . . They're [the new board] not doing what you did, which is ignore code for years and then suddenly fabricate an emergency for your own political reasons, *which is to work for your masters who are the KJ leadership*."

The evidence of discriminatory intent does not end with these public remarks. Supervisor Doles has privately made similar comments concerning "KJ lifestyle housing," and he has noted that in the Monroe community, "lots of people have a problem" with Hasidic Jews. This includes the belief in the community that Hasidic Jews are "*raping and taking money* from the average taxpayer." Supervisor Doles has admitted that, in light of the community's sentiment, the Town Board plans to use the moratorium to "level the playing field" against the Kiryas Joel "theocracy"



Dennis E. A. Lynch, Esq.
April 4, 2016
Page 4

because lawful democratic principles cannot be used to defend this theocracy while it uses the democratic process to, in the Supervisor's view, exempt itself from application of the law.

There can be no reasonable dispute over the pervasive discriminatory animus in Monroe. Hasidic individuals and developers whose clientele may include this community are being specifically targeted in order to "let KJ stay over in KJ" and to prevent the migration of Hasidic people. That hostility extends to the pending developments that would be subject to the moratorium, many of which have already received final or preliminary approval. Indeed, Councilman McQuade's statements that the moratorium specifically limit apartments to 1,000 square feet and that it do away with accessory use confirms that the proposal is directly aimed at prohibiting housing that might appeal to Hasidic Jewish families. By the Board's own words, the moratorium is merely a tool to "level the playing field" against, and to frustrate, developments that would otherwise be ready for development.

## II.    This Religious Discrimination Violates Numerous Federal and State Laws

The Town Board may not lawfully adopt a building moratorium in order to keep Hasidic Jews out of the community. The United States Constitution and numerous federal statutes prohibit religious discrimination and expose municipalities to substantial liability and attorneys' fees for taking such actions. The proposed moratorium, plainly directed at obstructing the developments, and thereby excluding Hasidic individuals from Monroe based on their religion, will violate numerous laws, including the Fair Housing Act ("FHA") and various provisions of the Federal and New York Constitutions. I note but a few of these violations:

### A.    Fair Housing Act

The FHA prohibits discrimination in the housing market based on religion. *See* 42 U.S.C. § 3604(a). The FHA "reach[es] a wide variety of discriminatory housing practices, including discriminatory zoning restrictions." *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir. 1995). The FHA likewise covers precisely the type of restriction the Town Board is contemplating in the moratorium, and courts have repeatedly recognized that developers may challenge municipal decisions that present a barrier to developments under the FHA. *Anderson Grp., LLC v. City of Saratoga Springs*, No. 1:05–cv–1369, 2011 WL 2472996, at *2 (N.D.N.Y. 2011); *see El Dorado Estates v. City of Fillmore*, 765 F.3d 1118, 1122 (9th Cir. 2014); *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1100 n.2 (3d Cir. 1996) (recognizing the standing of a developer to bring an FHA claim based upon harm from discrimination directed against tenants). The Town Board would violate the FHA because discriminatory animus would play "a significant factor in the position taken by the [the Board members] themselves or by those to whom the [Board members] were knowingly responsive." *LeBlanc-Sternberg*, 67 F.3d at 425. If a



discriminatory motive is present, which it plainly is here, then it is legally irrelevant that the moratorium could have been permissible if taken for nondiscriminatory reasons. *See id.*

### B.    Section 1983 and Constitutional Violations

The Town Board's actions would also be subject to challenge under 42 U.S.C. § 1983, which prohibits any local official from taking action in violation of constitutional rights. Municipalities and other local government units, such as the Town and its Board, are liable under § 1983 for official policies or customs that results in the denial of a constitutional right. *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978); *Wrav v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). In evaluating discriminatory intent, courts will consider the historical background of the challenged action, specific antecedent events, and statements of the decision makers. *See Vill. of Arlington Heights v. Metro Housing Dev. Corp.*, 429 U.S. 252, 266-68 (1977). And it bears note that, even if lawmakers themselves are unbiased, that discrimination will still be established if the discriminatory actions were taken in "response to significant community bias." *Community Hous. Trust v. Dep't of Consumer & Reg. Affairs*, 257 F. Supp. 2d 208, 1227 (D.D.C. 2003) (internal citations omitted). Given the background here and the pervasive, documented statements of the Town Board and community members to whom they respond, there can be no plausible denial that discriminatory intent underlies the moratorium.

### C.    Due Process

The Due Process clause prohibits the arbitrary deprivation of liberty or property without constitutionally-adequate process, and plaintiffs state a substantive due process claim when officials have acted arbitrarily or irrationally. *See Rivera v. Marcus*, 696 F.2d 1016, 1022 (2d Cir. 1982) (citations omitted); *Alliance of Auto Mfrs., Inc. v. Currey*, No. 13–4890– cv, 2015 WL 1529018, at *3 (2d Cir. Apr. 7, 2015). The Town Board's proposed arbitrary and irrational implementation of the moratorium in order to obstruct the developments and prevent Hasidic Jewish migration would plainly violate the Due Process clause.

### D.    Civil Rights Conspiracy

42 U.S.C. § 1985 authorizes actions based on conspiracies to interfere with federal civil rights motivated by class-based, invidious discriminatory animus behind the conspirators' acts. *See Robinson v. Allstate Ins. Co.*, 508 Fed. App'x 7, 9 (2d Cir. 2013). The Town Board members' proposed acceptance of the moratorium—based on invidious discrimination against Hasidic individuals, and knowingly interfering with these individuals' civil rights, depicts a strong case for civil rights conspiracy.



Dennis E. A. Lynch, Esq.
April 4, 2016
Page 6

**III.     The Town Board Should Avoid Violating the Civil Rights of the Hasidic Community
and Local Developers by Rejecting the Moratorium**

The moratorium clearly reflects religious discrimination against the Hasidic community.  It is
extremely unusual for a Town Board to enact a moratorium that applies to well-developed
projects, which already have site plan approval or preliminary site plan approval.  Indeed, if the
Town were truly interested in a taking a pause on development pending consideration of a new
plan, there would be no reason to include within the moratorium those developments whose site
plan has already been approved and that are ready for permits.

It is apparent, however, that the Town's interest in this moratorium is not to review a new plan,
but to stop developments from going up.  The Town's efforts to rush this moratorium through,
and the terms in which it has been discussed by the Board, demonstrate that its principal purpose
is to limit the potential that Hasidic Jews move into Monroe.  In view of the substantial and
documented record here of discriminatory animus, the Town's approval of the moratorium under
these circumstances would violate myriad provisions of federal and state law and expose the
Town and its Board members to substantial damages.  And as the Town Board acts as a group on
behalf of the Town, the individual Board members may not insulate themselves from liability by
appearing to publicly distance themselves from the decision of the overall Board.

We write to you now because our clients do not wish to pursue litigation if it can be avoided.  In
light of the record and potential liability here, we advise that the Town and its Board carefully
discuss these issues and the proposed moratorium with their insurance carrier before taking any
action that might expose the Board to liability.  And we urge the Board to reject this
unconstitutional moratorium.  Barring that, our clients are prepared to pursue their legal rights to
the full extent of the law.

Sincerely,

Steven A. Engel

Cc:

Harley Doles, Town Supervisor          Anthony Cardone, Councilman
Richard Colon, Councilman              Michael McGinn, Councilman
Gerard McQuade, Jr., Councilman        Michael Donnelly, Esq., Planning Board Attorney

**Richard J. Croughan**
**Attorney at Law**
**155 Main Street**
**Goshen, New York 10924**
(845) 294-5953
Fax (845) 294-3974

RECEIVED

APR - 4 2016

Town of Monroe
Town Clerk's Office

April 4, 2016

Town of Monroe
1465 Orange Turnpike
Monroe, NY 10950

RE:     Lands of Leva Sub-division Phase 1 and Phase 2

Dear Mr. Supervisor Doles and members of the Board:

Please be advised that I am the Attorney representing the Leva's on the aforementioned project that has final approval on phase 1 and Preliminary Approval on Phase 2. As you are aware this project has been going for at least 15 years and lasted many different board members and Supervisors. They have spent hundreds of thousands of dollars in taxes, getting approvals, doing the infrastructure, attorneys, various reviews and mandated studies by the various Boards. They have withstood previous moratoriums so that other studies could be completed.

In the case the Board is not familiar with the subdivision it is a two (2) phase subdivision with Phase one (1) consisting of ten (10) lots and Phase two (2) having eight (8) lots, one being the existing family home. They have secured, finally, the final approval on Phase 1, a ten (10) lot subdivision wherein they have received five (5) building permits and will be seeking the remaining five (5). Phase 2 is a eight lot subdivision, wherein one (1) of the lots is the existing Leva home, that has preliminary approval. This is viewed as a single integrated projected wherein improvements were made on the whole project but being developed in sections, so that a vested right would pertain to the whole project. This is best explained in *Schoonmaker Homes v. Village of Maybrook*, 178 A.D.2d 722, wherein a project developed in part, still has the vested rights for the whole project.

As you can imagine there was a lot of work that went into securing this 2 Phase Subdivision as well as money and time. The various Boards spent countless time reviewing the applications, mandating studies, supervising the infrastructure, mandating fees paid, taxes paid, review fees paid, studies paid all over the course of fifteen years. This project has never been shut down, never had issues with compliance, never delayed in producing requested materials, have always paid fees timely, have always worked closely with Boards and Building Inspector to ensure compliance. It would seem unfair to this Developer that the actions of a few in the Town would warrant shutting down all the projects in the Town.

They, the Leva's have spent hundreds of thousands of dollars vesting their rights in this project only to be told they may have a moratorium on all work with respect to all development in Monroe. They are not a new project, they are not a project in initial review, they are not a project in default of any of the Conditions, they are not asking for anything more than what they have been approved for. There

building permits match their submitted plans. Their Engineering Firm, Pietrzak & Pfau, has always submitted plans that match their construction. They have worked closely with the Building Inspector and have not had any work stoppages for any violations. They have been an upstanding member of the community for approximately over 44 years who has always complied with the Town.

The Leva's have a significant financial outlay into this project. As anyone in the Residential Construction business knows that now is the time to build. People look to buy homes now so that they will be complete by the summer before school starts. To impose a total moratorium on projects that have spent hundred's of thousands to secure a vested property right in a final approval is to deny them their property rights and subject the Board to possible litigation. This is not what the Leva's hope to do but they also need to protect their vested rights as a property owner who has endured the long arduous process of obtaining the necessary approvals and spent all the money and time to secure said rights only to have them taken away and to lose the prime selling time is unfair and unjust.

In the past, the Town has carved out exceptions to any proposed moratorium. If any Members may remember the Mansion Ridge development, whereas the Town realized how unfair it would be to include the Mansion Ridge Development in the moratorium and allowed them to continue with development. If the Board felt a moratorium was necessary I would respectfully request the Board consider the Leva project as a carve out as it would seem unfair and unjust to include them with other projects that have not filed an application and/or has not complied with the Town. This project has been in the pipeline for over fifteen (15) years, had endured hundreds of thousands in expenses, has complied with all the Board's requests, has had special reviews on the Rye Hill Corridor and yet has persevered through it all. The financial consequences of not permitting the Leva's to develop the property at the height of the selling season, and lasting for at least 3 months, would be ominous for them. We are looking to have our project, Phase 1 and Phase 2, be exempt from any such moratorium that the Town may be considering and/or be carved out as an exception.

Thank you for your time and I hope you carefully consider our position.

Very truly yours,

Richard J. Croughan

# BLUSTEIN, SHAPIRO, RICH & BARONE, LLP
## ATTORNEYS AT LAW

BURT J. BLUSTEIN
MICHAEL S. BLUSTEIN
RICHARD J. SHAPIRO ♦
GARDINER S. BARONE
RITA G. RICH
JAY R. MYROW
WILLIAM A. FRANK

*ALSO ADMITTED IN PA\**
*ALSO ADMITTED IN NJ^*
*MASTER OF LAWS IN TAXATION†*

10 MATTHEWS STREET
GOSHEN, NEW YORK 10924
(845) 291-0011
FAX (845) 291-0021
bsr@mid-hudsonlaw.com
www.mid-hudsonlaw.com

AUSTIN F. DUBOIS\*^†
RAYMOND P. RAICHE^
MARCELLO A. CIRIGLIANO
DIANA PUGLISI
JEANINE GARRITANO WADESON
BRIAN M. NEWMAN^
MEGAN R. CONROY
ARTHUR SHAPIRO
OF COUNSEL
JUSTICE DAVID S. RITTER
Appellate Division (Ret.)
OF COUNSEL
CHARLES A. JUDELSON
1942-2014

*VIA FACSIMILE (845) 782-5597*
*and REGULAR MAIL*

April 4, 2016

Town Supervisor Harley E. Doles III
Town of Monroe
11 Stage Road
Monroe, New York 10950

       Re:   Henry Farms Realty Subdivision
               Owner: Highview Properties D.H.F. INC.
               Proposed Moratorium Local Law

Dear Supervisor Doles and Members of the Town Board:

      I represent Highview Properties D.H.F. INC., the owners of the Henry Farms Realty Subdivision. I am writing on behalf of my client to object to the term of the proposed local law to implement a moratorium on the development of residential property in the Town. Specifically, the proposed local law is significantly overbroad by its inclusion of residential subdivisions having received conditional final approval from the Town Planning Board.

      The Henry Farm Subdivision approval specifically illustrates the overbroad scope of the proposed law. The original application for the subdivision was made in the year 2000. The project was reviewed under the State Environmental Quality Review Act for over four years after the Planning Board had issued a positive declaration on the project. The project then underwent another eleven years of review before conditional final approval was granted on April 14, 2015.

      It is requested that the proposed local law be modified to exempt from the moratorium residential subdivisions that have received conditional final approval. These projects have received significant review for environmental and other impacts and have been found to be in compliance with all applicable regulations by numerous involved agencies. Public input was heard before the approvals were granted for the project. At this time, all that remain are the obtaining of essentially administrative approvals (formation of drainage district, etc.) and there is no reason to stop the processing of these

---

Warwick Office: 21 Oakland Avenue, Warwick, New York 10990 – Tel: (845) 988-1515

Town Supervisor Harley E. Doles III
April 4, 2016
**2 | P a g e**

projects for a ninety day period. As an alternative to a full exemption for these projects, the local law could also be modified to allow the processing of conditions to continue while a ninety day moratorium remains for the issuance of building permits.

Please make this letter a part of the record in consideration of the said local law. Thank you for your courtesies.

Respectfully,

BLUSTEIN, SHAPIRO, RICH & BARONE, LLP

JAY R. MYROW

cc:     Highview Properties D.H.F. INC.



Gerald N. Jacobowitz
David B. Gubits
Howard Protter
Donald G. Nichol
Larry Wolinsky
J. Benjamin Gailey
Mark A. Krohn*
John C. Cappello
George W. Lithco
Michele L. Babcock
Sanford R. Altman
Gary M. Schuster
William E. Duquette
Kara J. Cavallo
Marcia A. Jacobowitz
F. Bryan Paz
Andrea L. Dumais
Alanna C. Iacono
Jennifer S. Echevarria
Kelly A. Pressler
Robert M. Lefland
Peter R. Eriksen**
John H. Thomas, Jr.**
Carmee G. Murphy**

SILVER & LESSER, P.C.**
Barry Silver
Sol Lesser

*LLM IN TAXATION
**OF COUNSEL

158 Orange Avenue
P.O. Box 367
Walden, NY 12586
tel. (845) 778-2121
fax (845) 778-5173

548 Broadway
Monticello, NY 12701
tel. (845) 794-1765
fax (845) 794-9781

JACOBOWITZ.COM

April 18, 2016

Hon. Supervisor and Town Board                                    <u>Via Email</u>
Town of Monroe                                                         <u>and Fax</u>
1465 Orange Turnpike
Monroe, NY 10950

        Re:    Bald Hill Estates
              Continued public hearing: proposed Moratorium Law
              Our File No.: 3993-1

Dear Supervisor and Town Board Members:

This letter is submitted for the continued public hearing on the proposed local law under consideration by the Town Board. The law would impose a moratorium on the consideration of residential housing in the Town.

As you know, the proposed Bald Hill Estates development has been the subject of a zoning change, an EIS and Supplemental EIS, and extensive findings, as well as ongoing site plan review. Following settlement of a proceeding that challenged certain aspects of the land use approvals, the Town and the owner entered into a stipulation of settlement in 2010.

Pursuant to the stipulation, the Town adopted a modified finding statement and the Planning Board granted preliminary site plan, special use permit and subdivision approval to the project. Since that time, the project has diligently proceeded to secure required approvals from other agencies, most notably the various approvals required for the proposed water supply.

The applicant submitted its proposed final plans to the Planning Board on January 16, 2016. The applicant has met with the Planning Board's consultants to review the history of the project, the status of other agency approvals and the proposed final plan, and awaits an opportunity to review the plan with the Planning Board.

The stipulation provides for annual extensions of the preliminary land use approvals, and, upon compliance with the conditions of the stipulation, allows the applicant to vest its right to proceed under the 2008 Town Code.

RECEIVED

APR 18 2016

Town of Monroe
Town Clerk's Office

As presently proposed, it appears that the moratorium law under consideration by the Town Board would create a conflict with the stipulation by divesting the Planning Board of jurisdiction to grant the extension required by the stipulation of settlement.

Even more troubling, as any changes to the Town Code would not be effective with respect to the proposed plan of development, the proposed moratorium law will cause unnecessary delay in obtaining final approvals for this project. Since the law provides for extensions of the moratorium, that unnecessary delay could continue for an indefinite period.

For those reasons, we respectfully request that Section 2 of the proposed local law be amended to except from the moratorium any application that is being processed pursuant to the terms of a court ordered settlement that provides for the proposed development to be proceed to, and receive, final approval pursuant to provisions of the Town zoning law that were in effect prior to the settlement.

We appreciate the Board's consideration of this request.

Very truly yours,

George Lithco

GWL/je

CC:   Brian Nugent, Esq. (via email)
      Client (via email)

T:\DOCS\3993\001\11Y9232.WPD-GWL

RECEIVED

APR 1 8 2016

Town of Monroe
Town Clerk's Office



April 18, 2016

Gerald N. Jacobowitz
David B. Gubits
Howard Protter
Donald G. Nichol
Larry Wolinsky
J. Benjamin Gailey
Mark A. Krohn*
John C. Cappello
George W. Lithco
Michele L. Babcock
Sanford R. Altman
Gary M. Schuster
William E. Duquette
Kara J. Cavallo
Marcia A. Jacobowitz
F. Bryan Paz
Andrea L. Dumais
Alanna C. Iacono
Jennifer S. Echevarria
Kelly A. Pressler
Robert M. Lefland
Peter R. Eriksen**
John H. Thomas, Jr.**
Carmee G. Murphy**

SILVER & LESSER, P.C.*
Barry Silver
Sol Lesser

*LLM IN TAXATION
**OF COUNSEL

158 Orange Avenue
P.O. Box 367
Walden, NY 12586
tel. (845) 778-2121
fax (845) 778-5173

548 Broadway
Monticello, NY 12701
tel. (845) 791-1765
fax (845) 794-9781

JACOBOWITZ.COM

Hon. Supervisor and Town Board          Via Fax: <u>845-782-5597</u>
Town of Monroe
1465 Orange Turnpike
Monroe, NY 10950

> Re:   Bald Hill Estates
>       Town Water District
>       Our File No. 3993-1

Dear Supervisor and Town Board Members:

We appreciated the opportunity to appear at the Town Board meeting on February 29, 2016 to discuss the possibility of creating a Town water district to serve the proposed Bald Hill Estates development.   We thought it would be helpful to address questions raised by the members of the Board at that meeting:

1. *What is the benefit to the Town?*

There are several benefits:

- the Town would acquire a water supply system constructed to current municipal standards, as specified by the Town's engineer.
- the Town may utilize the water storage and distribution infrastructure installed by Bald Hill Estates to improve the water service to the adjoining residential area;
- the proposed tank site will provide adequate fire flow and pressure for commercial development proposed or anticipated in the Larkin Drive corridor;
- the tank site could readily be expanded to supply future growth in that corridor;
- the proposed wells could become part of a coordinated water supply plan for development of rateables in the Larkin Drive corridor, in concert with production wells developed on the Schwimmer and HBP properties; and
- due to its height and location on the Quickway corridor, the tank site may have ancillary value to the Town for siting municipal and wireless antennas.

**RECEIVED**

APR 1 8 2016

Town of Monroe
Town Clerk's Office

T:\DOCS\3993\001\11Z2532.DOC-GWL

Hon. Supervisor and Town Board                          April 18, 2016
Re:  Bald Hill Estates                                       Page Two
Our File No.: 3993-1

   2. *How would the Bald Hill project be served if there is no Town water district?*

   As currently proposed, a water transportation corporation would provide the water supply to the development.  The applicant has developed two water supply wells on the site that have proved adequate to provide the necessary water supply and has been moving forward on the water supply permitting. The water supply plan, map and report prepared by LJA was previously provided to the Town engineer and the Board as part of the submission to have the Town Board consent to the establishment of the transportation corporation.

   3. *What is the size of the water tank proposed by Bald Hill to meet its needs?*

   The water tank proposed for the Bald Hill development is a 350,000 gal capacity circular concrete tank.  The tank has a diameter of 40 feet and the roof would be 40 feet above the average ground elevation.

   4. *Why does the waters supply report calculate water use as 400 gpd per unit?*

   The water supply report was prepared in accordance with DEC and Department of Health requirements.  The current NYSDEC hydraulic loading rate is 110 gpd/bedroom, which would equate to 330 gpd. (*New York State Design Standards For Intermediate Sized Wastewater Treatment System,* March 5, 2014) 400 gpd was the standard hydraulic loading rate for single family homes for many years.

   5. *Does the water supply report demonstrate that there is adequate water available from the water supply wells?*

   Yes.  The report demonstrated that either of the two proposed production well provides at least 92 gpm, sufficient to meet the maximum daily demand of the Bald Hill development.  The regulatory standards for a public water supply require two production wells in order to ensure that one well may be taken out of service for repair or maintenance while the other well continues to supply the users.  The wells are not required to be situated in "different" aquifers.

   In addition, the water demand requirements do not fully consider the use of water conservation devices.  Finally, as a condition of issuing a Water Takings Permit, DEC requires that the operator develop and implement a water conservation plan that identifies and implements water conservation strategies.



RECEIVED

APR 1 8 2016

Town of Monroe
Town Clerk's Office

Hon. Supervisor and Town Board
Re: Bald Hill Estates
Our File No.: 3993-1

April 18, 2016
Page Three

### 6. *Does the water supply report consider the need for landscaping irrigation?*

No. The water supply report addresses the DEC standard, which is based on
domestic needs, and does not include irrigation. However, the excess well capacity is ample to
serve the non-domestic need for irrigation. Irrigation typically is scheduled to occur at off-peak
times and on a rolling basis. In addition, landscaping will be located in common areas that are
maintained by the Bald Hill Homeowners Association. Typically, landscaping shown on a site
plan must be maintained in good condition or replaced. It will be the responsibility of the Bald
Hill Homeowners Association to manage and maintain the landscaping, and it will be in the best
interests of owners to have an efficient and effective landscaping irrigation system that provides
the necessary water for irrigation without waste.

### 7. *What is the size of the proposed units?*

The site plan shows 138 dwelling units, of which 36 will be senior dwelling units. The
plan shows that the floor area of a typical unit is anticipated to be 1900-2400 SF, which will
allow a maximum of three bedrooms.

### 8. *Other Town districts have had maintenance and upkeep issues. Why will this water district be different?*

It is the applicant's understanding that the water facilities in many of the Town's districts
were originally designed and developed to be operated by the developers of subdivisions
approved in the 1960s and 1970s. In some cases, the original design and construction may not
have met municipal standards, and in other cases, the rates while in private ownership may not
have supported adequate maintenance, upkeep and management.

In this case, the Town has the opportunity to ensure the water supply system is designed
at its inception to meet municipal standards and properly constructed. The rate system will
support adequate management and proper maintenance, particularly if the district supplies
commercial uses along Larkin Drive.



RECEIVED

APR 1 8 2016

Town of Monroe
Town Clerk's Office

T:\DOCS\3993\001\1JZ2532.DOC-GWL

Hon. Supervisor and Town Board                    April 18, 2016
Re:  Bald Hill Estates                             Page Four
Our File No.: 3993-1

     If any additional information would be helpful to the Town or its consultants in
considering the merits of having a town water district serve this development, please let us know.

                       Very truly yours,

                       George Lithco

CC:   Planning Board (via email)
      Brian Nugent, Esq. (via email)
      Michael Donnelly, Esq. (via email)
      Mark Edsall, P.E. (via email)
      Leonard Jackson, P.E. (via email)
      Client (via email)

RECEIVED

APR 1 8 2016

Town of Monroe
Town Clerk's Office

T:\DOCS\3993\001\1IZ2532.DOC-GWL

*D'Ambrosio Family Property II LLC*

4/21/2016

To the honored Supervisor and Town Board Members of the TOWN OF MONROE,

I write this on behalf of my subdivision project which is located at 262 Schunnemunk Rd, Monroe, New York 10950.Tax ID 1-1-78.3. I would like for you to please take into consideration that my project should be exempt from the upcoming Moratorium for the following reasons:

I initially filed for the subdivision plan back in December of 2015 and I have since then invested a significant amount of time and money for engineering, planning, environmental studies, surveying, etc. This amount also does not include the application fee and the $15,000.00 in escrow money deposited with the Town for the application review. The project was reviewed at the February 2016 Planning Board meeting and constructive comments from the Planning Board were received. My engineer has worked to address the comments received from the Planning Board at that meeting.

The Planning Board requested that a site walk be completed for the project to outline the specific limits of proposed development and review any concerns or items that the Planning Board may consider significant during the detailed design of the project. It was agreed upon that the site walk would be completed when warmer weather was upon us. Upon the arrival of spring in March, a site walk was scheduled for Saturday April 2, 2016 and was then rescheduled to Friday April 1, 2016. However, there was not enough time to walk the property after 5pm and my engineer was not available that Friday night to accompany the Board. The site walk was then rescheduled for Saturday April 9, 2016 at 10am. This site walk was cancelled late on Friday April 8th, night due to the potential for inclement weather. The inclement weather never occurred on Saturday but it was too late to have the site walk put back on. Our application has now been waiting several weeks for another date to be scheduled. This is significant as I do not want to pay to finish the detailed design of the subdivision until the site walk has been completed so that my engineer does not have to redo the plans for any changes requested. This has set me back about 4 weeks so far.

The proposed plan is a 5 lot subdivision that conforms to the current Town Zoning for the RR 1.0 district. The plan requires no variances and we are developing the property according to the applicable zoning laws. I do not see why my project should be stopped from continuing through the subdivision process. It is my understanding that if a moratorium is approved, that applications would not be processed or even reviewed. I believe this to be unfair as I would like to continue with the review process so I do not lose more time. I understand that the review of the application by the Planning Board would be at my own risk if the zoning laws were to change and that the Board could not approve the project under moratorium but a majority of the Planning Board review, environmental review RECEIVED

APR 2 1 2016

Town of Monroe
Town Clerk's Office

engineering studies would still be able to be completed, reviewed and approved.  By not reviewing applications, it could be delayed by months or longer and I am being punished for following the zoning laws and the planning process.

Kindly please take my situation into consideration and I would request that the Board allow for my project currently before the Planning Board to continue to proceed through the subdivision process.

Thank you for your consideration.

*"And I'm looking forward to be a resident in the beautiful "TOWN OF MONROE"*

*Sincerely*

*Victor Frankl*

Victor Frankl
62 West 47 Street
New York, NY 10036
**T.**   212.575.9333 Ext. 222
**C.**   718.809.4883
**E.**   victorf@franklcorp.com

Page **2** of **2**

RECEIVED

APR 2 1 2016

Town of Monroe
Town Clerk's Office

4/22/2016

To the honored Supervisor and Town Board Members of the TOWN OF MONROE,

My name is Joel Mann.  I am a local planning consultant with the firm Brach and Mann Associates located in Monroe.  Within my professional capacity I am involved in the planning process for a vast majority of the applications before the Planning/zoning  Board and Building Department submission for permits issued within the Town of Monroe, surrounding the Village of Kiryas Joel.  I would like to share some relevant facts concerning the proposed building moratorium and the ultimate scope of development currently proposed within the Town.

First, I'd like to point out that the majority of construction work in the Town of Monroe is for renovating and/or upgrading existing single family dwellings, some with accessory apartment additions but a large majority of the single family dwellings remain in their existing configuration.  The exception is the Vintage Vista subdivision which was approved some 5 years ago and the approval included approximately half the dwellings to have an accessory apartment and the remainder having no accessory apartment.  I will follow up on that point further into my letter.  Overall, there is very little new residential new construction being completed.

All approved construction and development activity within the Town falls into one of the five following categories:

1. Rebuilding/renovation of old single family dwellings or adding an extension on the dwelling.  This type of construction really does not leave any overall impact on the Town; it's more of neighborhood character and appearance.  This also is assisting to update and improve properties keeping property values up.  A building moratorium would significantly hurt existing individual property owners by effectively banning building permits during the peak of the construction season.

2. Addition of an accessory apartment to an existing single family dwelling.  This is occurring but on a rather modest scale.

3. The Vintage Vista project, what is a 28 lot subdivision. This is a single isolated subdivision bordering the Village of KJ -- This project consists of a maximum of 50 percent of the units with accessory apartments.  In addition, the vast majority of these units has either been completed or is in the process of being completed.  This was reviewed and approved by the Planning Board through the planning process.  A building moratorium will not change this development.

4. The Rye Hill Road corridor subdivisions, consisting of a cluster of 185 parcels. The lots contained within these developments are either still pending final approval or have conditions being addressed before being processed for final approval.  A building moratorium will not halt these developments as these applications have been within the Planning Process for more than 10-15 years and have received their final approvals.

5. Projects currently in the planning-board process. These projects take a substantial amount of time through the planning process before being granted approvals, let alone starting construction and to my knowledge; no significant projects (greater than 10 lots) have recently applied to the Planning Board for review.

RECEIVED

APR 2 2 2016

Town of Monroe
Town Clerk's Office

4/22/2016

Taking all of the above into consideration, an immediate halt to all construction work does not appear to be warranted. The remaking of the comprehensive plan doesn't call for a required building moratorium to do so.  As such, it appears that a revision/update of the comprehensive plan can be completed within three months prior to any new substantial developments.  This moratorium will only serve to hurt individual land owners and could be avoided with the comprehensive plan update simply being completed.

A moratorium like the one currently forwarded by the town board will mainly affect individual lot owners who are people and taxpayers of modest means working hard to pay their mortgages on land that they would like to improve or expand upon. Some of those to be affected have only recently closed on their properties, with the goal to rebuild or renovate or extend the unit it should serve their needs, and a building moratorium will adversely impact their ability to make their mortgage payments, potentially forcing them into foreclosure – a situation which benefits no one.

The building moratorium will also result in the Planning Board and Building Department being overwhelmed with new applications upon for building permits upon lifting of any moratorium.  Overall, please review what this moratorium will accomplish if the items that the Town wishes to update can be completed without a moratorium.

Respectfully,

_____
*Joel Mann*

**BRACH & MANN ASSOCIATES**

*PO Box 622*
*Monroe, NY 10949*
***T.*** *845.782.5014 Ext. 201*
***C.*** *845.662.4799*
***F.*** *845.782.5017*
***E.*** *joel@bmassoc.com*

RECEIVED

APR 2 2 2016

Town of Monroe
Town Clerk's Office



PIETRZAK & PFAU
ENGINEERING & SURVEYING, PLLC

April 21, 2016

VIA E-MAIL & REGULAR MAIL
Town Supervisor Harley E. Doles III
Town of Monroe
1465 Orange Turnpike
Monroe, NY 10950

**RECEIVED**

**APR 2 2 2016**

Town of Monroe
Town Clerk's Office

Re:   Proposed Moratorium on the
Development of Residential Property

Dear Supervisor Doles and Members of the Town Board:

Our office provides the engineering services and represents many of the projects located along the Rye Hill Corridor in the Town of Monroe. These projects are:

- Eagle Ridge Subdivision
- Lands of Fini Subdivision
- Lands of Leva Major Subdivision
- Polk Farm Subdivision – Phases I & II
- Rye Hill Estates
- Shea Meadows Cluster Subdivision

Each of these projects were included in the Generic Impact Statement for the Rye Hill Corridor, which was prepared by the consultants for the Town, and funded in the amount of $108,500.00 by the applicants of each project studied. This process lasted from early 2002, until the GEIS Findings Statement was accepted by the Town of Monroe Planning Board in April of 2004. It should be noted that this study took into account the Woodroe Estates and Smith Farm projects located in the Village of Monroe, to ensure a comprehensive study of the impacts to the Town. In addition to these costs, the GEIS required that the developers of each project pay a share of the required Orange Turnpike/Reynolds road intersection improvements totaling $250,000.

Each project was subject to the Town of Monroe Comprehensive Master Plan review of 2005, and Local Laws enacted with regard to the Comprehensive master Plan in 2008. Additionally, each project was subject to the Orange County Sewer Moratorium, and the confusion of sewer ownership between the Town and the County in 2011.

In addition to these setbacks, each project included project specific agency reviews, which were required prior to approval by the Town Planning Board. The projects have progressed through the approval process, and maintain the approvals as follows:

262 GREENWICH AVENUE, SUITE A
GOSHEN, NEW YORK 10924
(845) 294-0606  · FAX (845) 294-0610

2 HAMILTON AVENUE
MONTICELLO, NEW YORK 12701
(845) 796-4646  · FAX (845) 796-4092

**Eagle Ridge Subdivision:**
- Preliminary Subdivision Approval from the Town Planning Board
- NYS DEC Sewer Main Extension Approval
- NYS DEC Municipal Pump Station Approval
- Orange County Sewer District No. 1 Approval
- Orange County Department of Health Realty Subdivision Approval
- Orange County Department of Public Works Entrance Approval
- Submitted to the Town Planning Board for Final Subdivision Approval

**Lands of Fini Subdivision:**
- Phase 1 Final Subdivision Approval from the Town Planning Board
- Overall Subdivision Preliminary Approval from the Town Planning Board
- NYS DEC Sewer Main Extension Approval
- Orange County Sewer District No. 1 Approval
- Orange County Department of Health Realty Subdivision Approval
- Town of Monroe Drainage District Formation Approval

**Lands of Leva Major Subdivision:**
- Phase 1 Final Subdivision Approval from the Town Planning Board & map filed with the Orange County Clerk
- Overall Subdivision Preliminary Approval from the Town Planning Board
- NYS DEC Sewer Main Extesion Approval
- Orange County Sewer District No. 1 Approval
- Orange County Department of Health Realty Subdivision Approval
- Town of Monroe Drainage District Formation Approval

**Polak Farm Subdivision Phases I & II**
- Final Subdivision Approval from the Town Planning Board
- NYS DEC Sewer Main Extension Approval
- NYS DEC Municipal Pump Station Approval
- Orange County Sewer District No. 1 Approval
- Orange County Department of Health Realty Subdivision Approval

**Rye Hill Estates:**
- Project Design completed
- Public Hearing for Subdivision Approval held and closed
- Preliminary Approval Pending
- Project is a critical piece for the connection of the roadway to be constructed parallel to Rye Hill Road, as desired by the Town and studied in the Rye Hill Corridor GEIS

Shea Meadows Cluster Subdivision:
- Final Subdivision Approval from the Town Planning Board
- NYS DEC Sewer Main Extension Approval
- Orange County Sewer District No. 1 Approval
- Orange County Department of Health Realty Subdivision Approval
- Orange County Department of Health Water Main Extension Approval
- Village of Monroe Water Main Approval
- Village of Monroe Water Supply Agreement Approval
- Town of Monroe Water District Extension Approval
- Town of Monroe Drainage District Formation Approval

Each of these designs, reviews and approvals have taken a significant financial investment by the owners and applicants of the projects listed above. Given this information, we request that the Board exempt these projects from the proposed Moratorium on the Development of Residential Property. In addition, we request that all projects that have received Preliminary Approval by the Town of Monroe Planning Board, which are currently being reviewed by outside agencies, be exempt from the proposed Moratorium on the Development of Residential Property.

Thank you for your consideration in this matter.

Very truly yours,

PIETRZAK & PFAU, PLLC

Vincent A. Pietrzak, P.E., P.L.S., LEED®AP

VAP/tmp

# BLUSTEIN, SHAPIRO, RICH & BARONE, LLP

## ATTORNEYS AT LAW

**BURT J. BLUSTEIN**
**MICHAEL S. BLUSTEIN**
**RICHARD J. SHAPIRO** ♦
**GARDINER S. BARONE** ♦
**RITA G. RICH**
**JAY R. MYROW**
**WILLIAM A. FRANK**
**AUSTIN F. DUBOIS** ♦ ^ †

*ALSO ADMITTED IN PA\**
*ALSO ADMITTED IN NJ^*
*MASTER OF LAWS IN TAXATION†*

**10 MATTHEWS STREET**
**GOSHEN, NEW YORK 10924**
**(845) 291-0011**
**FAX (845) 291-0021**
bsr@mid-hudsonlaw.com
www.mid-hudsonlaw.com

**RAYMOND P. RAICHE^**
**MARCELLO CIRIGLIANO**
**DIANA PUGLISI**
**JEANINE GARRITANO WADESON**
**BRIAN M. NEWMAN^**
**MEGAN R. CONROY**
**REBECCA C. JOHNSON**
**ARTHUR SHAPIRO**
OF COUNSEL
**JUSTICE DAVID S. RITTER**
Appellate Division (Ret.)
OF COUNSEL
**CHARLES A. JUDELSON**
1942-2014

April 22, 2016

Town Supervisor
Town Board Members
Town of Monroe
1465 Orange Turnpike
Monroe, New York 10950

Via Email, Fax & Mail

Re:    Proposed Moratorium
       Public Comment

Dear Supervisor Doles & Town Board Members:

As you are aware from my appearance before the Town Board during its meeting on Monday, April 18, 2016, I represent C H A B Five Realty, LLC ("CHAB 5") and Golden Ray, LLC ("Golden Ray"), who recently acquired two approved subdivisions in the Town of Monroe. Golden Ray is the owner of the Shea Meadows residential subdivision, and CHAB 5 is the owner of the Polak Farm residential subdivision.

These two projects are located in what is generally referred to as the Rye Hill Corridor, which consists of seven residential subdivisions projects spread along either side of Rye Hill Road. While these projects were initially proposed as separate and independent residential developments, the Planning Board and Town Board engaged in an integrated review of the projects to assess their combined impacts. The perceived impacts included those issues presently raised as concerns in the proposed moratorium. However, the fact is Shea Meadows and Polak Farm were already adjudged via the SEQRA process not to pose any negative threats to the general public or environment. Indeed, from the comprehensive assessment of the Rye Hill Corridor, an integrated development plan was devised to coordinate five of these separate projects into a seemingly seamless integrated development along one side of Rye Hill Rd.

Undeniably, one of the primary benefits of the integrated review and approval of the projects in the Rye Hill Corridor was the ability of the Planning Board and Town Board to extract certain concessions from the developers, which included the payment of substantial traffic impact fees and the development of a public road (Obama Way / Shea Farm Road) which, when built, will be a public road running parallel to Rye Hill Rd.

The proposed Shea Farm Road will be built to Town Road Specifications, at substantial cost to the developers and at no cost to the Town. Indeed, the developers will reimburse the Town the fees incurred by the Town to have the construction of the road inspected, so the Town will have every assurance that the road meets all applicable Town specifications, including those pertaining to erosion, sediment, and stormwater control.

Shea Farm Road will divert local traffic from Rye Hill Road, so the net traffic impact of the full buildout of the corridor will have minimal impact on Rye Hill Road. Without the coordinated review and approval of these projects in the corridor, the Town cannot expect the segregated development of the land in the corridor to result in the same level of integration that resulted from the nearly ten year long review process these projects were put through by the Town and other outside governmental agencies, including the NYS Department of Environmental Conservation ("DEC").

Indeed, an as-of-right development of the land along the corridor may be achieved via culs-de-sac and short loop roads off of Rye Hill Road. While the lot yield from this style of as-of-right development may be less than the number of lots that have been approved as a result of the coordinated review, this style of development will not result in the high level of integration that will be achieved via construction of the proposed parallel road – Shea Farm Road.

In addition, a smaller scale development of the corridor will not generate sufficient economic return to support the extension of municipal water and sanitary sewer services to the projects. This will likely have a net negative impact on ground water resources, which could be avoided by permitting the corridor to be developed as presently proposed.

Moreover, the scope of review alluded to by the prefatory language of the proposed moratorium will surely take longer than ninety days to complete, so it is nothing more than a pure fiction to maintain that the moratorium will only be in place for a mere ninety (90) days. In this regard, the prefatory language that is put forth to justify the adoption of the proposed moratorium states:

> A proper Town Comprehensive [Master] Plan ["CMP"] would include various elements at the level of detail adapted to the requirements of the Town that would provide for the goal of the Town for smart and sustainable land use practices…. and the Town needs to undertake a comprehensive review so that a current CMP reflects all Town Law requirements

If the Town genuinely seeks to undertake a "comprehensive review" and adopt a new or revised CMP and corresponding zoning laws, it would seem that doing so would take longer than the ninety days duration of the proposed moratorium. Indeed, the prefatory language to the propose moratorium reveals that it was three years after the time the last CMP was adopted, in 2005, until the Town adopted zoning laws to implement that CMP. Not only does this reveal that the moratorium, from the inception, is based on a fictitious view of the prevailing circumstances, but the very same basis for enacted a moratorium existed last year, when the Town proposed comprehensive changes to its residential zoning laws, but the Town was then confident that it could evaluate and adopt any necessary changes without revising its CMP and without adopting a moratorium. Nothing has changed since then, other than local politics.

As further evidence that the enactment of the proposed moratorium is based on pure political fiction is the well-documented fact that there has been virtually no wide-scale residential development in the Town since it adopted its zoning laws in 2008, which was after the "Housing Bubble" burst. There surely hasn't been the level of development post the "Housing Bubble" that would warrant the need to enact a moratorium. Therefore, there is simply no empirical evidence to support a claim that there has been meaningful widespread development.

The fact that the proposed moratorium is based on false pretenses is a sure sign that there is another agenda being pursued via the enactment of the moratorium – a basis that, if it were credible, would have been stated in the proposed moratorium. Therefore, as indicated by others who oppose the enactment of the moratorium, the Town is seeking to achieve via enactment of a moratorium something that it cannot legitimately obtain.

It is widely known that municipalities use zoning for illicit purposes. Indeed, the topic has received extensive analysis in the legal community. Long ago, the Advisory Commission on Regulatory Barriers to Affordable Housing made the following finding:

> In community after community across the country, local governments
> employ zoning and subdivision ordinances, building codes, and
> permitting procedures to prevent development of affordable housing.
> "Not In My Back Yard"—the NIMBY syndrome—has become the
> rallying cry for current residents of these communities.

Report, as quoted in 2 N.Y. Zoning Law & Prac. § 20:01. *See also* Suffolk Housing Services v. Town of Brookhaven, 70 N.Y.2d 122 [1987]("[A] municipality may not legitimately exercise its zoning power to effectuate socioeconomic or racial discrimination."); Robert E. Kurzius, Inc. v. Incorporated Village of Upper Brookville, 51 N.Y.2d 338, [1980] (holding a zoning ordinance will be invalidated if "enacted with an exclusionary purpose, or it ignores regional needs and has an unjustifiably exclusionary effect."); Weber v City of New York, 973 F.Supp.2d 227 [EDNY 2013] (Hasidic Jewish people are members of a protected class under the equal protection clause).

As recently as this week, a New York appellate court found sufficient questions existed with respect to the intended exclusionary intent of the recently enacted zoning laws in the Village of Woodbury. See Joel v Vil. of Woodbury, 2016 NY Slip Op 03005 [2nd Dept., Apr. 20, 2016] (reversing ruling of lower court on basis that "triable issues of fact exist as to whether the Comprehensive Plan and the Zoning Amendments amount to unconstitutional exclusionary zoning.").

Given the strong precedent prohibiting discriminatory and exclusionary zoning, the recent decision by an appellate court finding sufficient evidence of discriminatory intent by the Village of Woodbury against Hasidic Jews, the well-documented efforts of the Town of Monroe to ascertain the religious affiliation of the developers of the projects within the Rye Hill Corridor immediately before proposing the moratorium, and documented comments by elected town officials that reveal their concern with Hasidic Jewish families populating the Town, there is highly persuasive evidence of the improper motives of the Town with respect to the proposed moratorium and presumptive changes to the zoning laws that will follow.

Regrettably, under the false veil of the proposed moratorium, the Town will actually undermine the land use objectives that were set forth in the 2005 CMP and enacted with the zoning changes in 2008. As Engineer Pfau and I stated during our comments at the board meeting on April 18th, the seven projects that are part of the Rye Hill Corridor are the end result of years of extensive environmental, engineering, and planning review, which yielded an integrated development that accommodates the growing population of the town, while avoiding the impacts that would otherwise be the unavoidable byproducts of developments that were sequestered off of Rye Hill Road via culs-de-sacs and loop roads.

The extensive and in-depth level of review is evidenced by the well-documented fact that the Applicants funding the seven different projects probably spent in excess of one million dollars on engineering studies, plans, analysis and etc. to identify and address the very concerns and issues that the Town presently puts forth as the ostensible basis for the proposed moratorium. To be sure, the Applicants were required to fund a generic impact study at the cost of $108,500, which was completed during 2002 through 2004, and the findings set forth in the study were accepted by the Town. With a million dollars having been spent to identify and address the relevant areas of concern, it is difficult to imagine that anything was actually overlooked in the environmental and planning review process.

In order for the parallel public road and other infrastructure to be completed to absorb the traffic that will be generated by the development of the Rye Hill Corridor, the seven projects should be permitted to proceed without political interruption. Delaying the projects while the town leaders pursue other political objectives will diminish the economic benefits to the point where the planned developments are no longer economically feasible. To be sure, the development parcels were recently sold at prices that reflected the number of housing units, including accessory apartments, that could be built in the project as approved. Taking away the number of housing units by up-zoning and/or imposing other zoning constraints will diminish economic return to the point where the cost of the extensive infrastructure is no longer viable.

As to the Shea Meadows and Polak Farms projects, the property owners have documented their desire to proceed with construction of the approved infrastructure. All of the approved infrastructure satisfies all the engineering and environmental requirements and concerns of applicable law. There is no cogent reason that supports the Town's claim that its stormwater, site clearing, erosion control laws, etc., are inadequate and/or insufficient to protect the general welfare of the public from the undisclosed harms intimated in the proposed moratorium. Indeed, to the extent that the applicable standards are set by the DEC and/or the US Army Corps of Engineers ("ACE"), the Town is suggesting that the standards promulgated by these two governmental agencies are insufficient to protect the public and environment, which is a claim that ignores the fact that the DEC and ACE have a far more extensive level of expertise in the relevant environmental areas than the Town. Moreover, the fact that no other municipality has enacted or is even considering a building moratorium for the purposes stated by the Town is also cogent proof that the Town is nominating a false basis to support the enactment of the proposed moratorium.

Stripped of the pretenses stated in the preamble to the proposed moratorium, there is only one plausible basis left to support the enactment of the proposed moratorium: the Town is pursuing an agenda of exclusionary zoning. The consequences of pursuing such a policy are self-evident.

If the pretenses stated in the preamble to the proposed moratorium were true, then reason and logic indicate the Town is committing itself to spend hundreds of thousands of dollars, if not more than a million dollars, from the Town coffers to surpass the level of review already undertaken in connection with processing the projects in the Rye Hill Corridor.

Of course, if the Town underfunds its review or doesn't identify any significant and meaningful changes that warrant the adoption of a new or revised CMP, then the Town will be an easy target for claims that the moratorium was simply part of a political charade.

In view of the attendant circumstances, the Town leaders are encouraged to honor the pledge made by the Town when its Planning Board issued the conditional final approvals to the Shea Meadows and Polak Farm projects: that when the conditions are satisfied, the projects can be built. Therefore, these projects need to be exempt from the proposed moratorium.

Respectfully yours,
BLUSTEIN, SHAPIRO, RICH
& BARONE, LLP

*GS Barone*

Gardiner S. Barone

### RONALD S. KOSSAR

ATTORNEY AT LAW

402 EAST MAIN STREET
POST OFFICE BOX 548
MIDDLETOWN, NEW YORK 10940

TELEPHONE (845) 343-5111
TELECOPIER (845) 343-5222
E-MAIL rsklaw@frontiernet.net

April 21, 2016

Hon. Harley Doles, Supervisor
and Members of the Town Board
Town of Monroe Town Board
1465 Orange Turnpike
Monroe, New York 10950

Re:   Proposed Residential Moratorium Local
Law
Premises known as the Smith Farm
Subdivision located at (No Number )
Gilbert Street, Town of Monroe, Orange
County, New York
Section 3, Block 1, Lot 8
(the "Smith Farm Subdivision")

Dear Supervisor Doles and Members of the Town Board:

Please be advised that this office represents BMG Monroe I, LLC, the Developer of the Smith Farm Subdivision.

This letter is being submitted to you for further consideration of the comments that my office made on behalf of my client, BMG Monroe I, LLC, in opposition to the Proposed Residential Moratorium Local Law held before the Town of Monroe Town Board on Monday, April 4, 2016 at 7:30 p.m.

As I stated in my public comments at the Public Hearing I would like to remind you that at the Public Hearing held in December 2015 of the Proposed Amendment to the Accessory Residences the Town Board looked me straight in the eye and promised that any Moratorium would not affect approved plans such as the Smith Farm Subdivision which had received Conditional Final Approval because all such projects had been fully vetted by the Town of Monroe Planning Board including the requisite SEQRA Review Process.

RECEIVED

APR 2 2 2016

Town of Monroe
Town Clerk's Office

Hon. Harley Doles, Supervisor
and Members of the Town Board
Town of Monroe Town Board

April 21, 2016
Page 2

It is respectfully submitted that for the reasons set forth herein the Proposed Residential Moratorium Ordinance should exempt any project that has received Conditional Final Approval from the Planning Board.

The Smith Farm Subdivision is a unique case unto itself in that it is a joint project with the Village of Monroe and the Town of Monroe with the Village of Monroe designated as Lead Agency.

The Smith Farm Subdivision has been fully vetted by the Town of Monroe Planning Board over the last seventeen (17) years including the requisite and extensive SEQRA review. The Smith Farm Subdivision was not approved by the Town of Monroe Planning Board for Accessory Residences nor will the construction of the Smith Farm Subdivision include any such Accessory Residences.

The Smith Farm Subdivision has compiled with all of the conditions set forth in the concurrent/joint Resolution granting Final Conditional Subdivision, Site Plan and Special Permit issued by the Town of Monroe Planning Board and Village of Monroe Planning Board on August 12, 2015.

BMG Monroe I, LLC, as the Developer of the Smith Farm Subdivision has:

(i)     Approved plans after having spent millions of dollars invested in the Smith Farm Development;
(ii)    Implemented all of the conditions in the Conditional Final Approvals granted jointly by Town and Village on August 12, 2015;
(iii)   Obtained Site Plan Approval in accordance with signed Site Plan Maps by Town and Village on November 10, 2015 without conditions;
(iv)    Obtained New York State Department of Health ("DOH") Approval;
(v)     Submitted the Subdivision Map approved by DOH to Town and Village for signature;
(vi)    Posted bonds with the Village and Town; (Village + $3,000,000.00) (Town $698,948.25);
(vii)   Entered into a Sewer Use Agreement with the Village and paid over $185,000.00 in partial payment of monies due the Village;
(viii)  Paid required Town Inspection Fees ($55,000.00 +/-);
(ix)    Paid required Town Parkland Fee ($63,000.00 +/-);

Hon. Harley Doles, Supervisor
and Members of the Town Board
Town of Monroe Town Board

April 21 2016
Page 3

(x)     Entered into Construction Contracts with Contractors for Project
        Construction; and, as such, has incurred legal obligations to pay the
        General Contractor who in turn has legal obligations to pay its
        Subcontractors with jobs at stake;

(xi)    Made Irrevocable Dedications to the Village;

(xii)   Already cleared the site for Phase I Construction and

(xiii)  Is in the process of implementing the Stormwater Pollution Prevention
        Plan (SWPPP) Plan for the DEC; and

(xiv)   Is in the process of construction for offsite improvements, i.e., road
        improvements, traffic control improvements and sewer improvements and
        contributed $133,000.00 towards design and installation of traffic light at
        Gilbert Street - NYS Route 17 Intersection.

It is respectfully submitted that the Smith Farm Subdivision has vested rights.
The Smith Farm Subdivision has compiled with all of the conditions of the Conditional
Final Approvals issued by the Town of Monroe Planning Board and the Village of
Monroe Planning Board and, in fact, has been in the construction phase since
November 2015. This is evidenced by weekly Construction Project Review Meetings
that have been held jointly with the Town and Village over the past several months
since November 2015.

The Smith Farm Subdivision must be exempt from any Proposed Residential
Moratorium Local Law.

The failure to do so by the Town of Monroe Town Board will endanger the public
health, safety and welfare of the Town of Monroe and the Village of Monroe.

Based upon my experience as an attorney having practiced in Orange County
for over forty (40) years a review of a Comprehensive Master Plan cannot be completed
in ninety (90) days, one hundred and eighty (180) days or even three hundred and
sixty-five (365) days. Rather, it is typically a one and half (½) or two (2) year process.
As such, what is the purpose of the Proposed Residential Moratorium Local Law.

If it is the intent of the Town Board of the Town of Monroe to engage in rezoning
or strip Smith Farm Subdivision of its existing approvals then say so now and my client
will have no alternative other than to commence any and all necessary legal action
against the Town of Monroe to protect its interest in this matter. Any such litigation will
expose the Town of Monroe to potential damages in the tens of millions of dollars.

Hon. Harley Doles, Supervisor
and Members of the Town Board
Town of Monroe Town Board

April 21, 2016
Page 4

As I stated in my public comments at the Public Hearing held on April 4, 2016 although litigation may be good for the lawyers it is not good for the Town of Monroe.

Accordingly, for the reasons set forth above, both my client BMG Monroe I, LLC, and my office urge the Town Board of the Town of Monroe to exempt the Smith Farm Subdivision from any Moratorium to the extent the Proposed Residential Moratorium Local Law is adopted by the Town of Monroe Town Board.

On behalf of my client, BMG Monroe I, LLC, my office hereby respectfully urge the Town Board of the Town of Monroe to reconsider its action and withdraw the Proposed Local Moratorium Law.

Thank you for your kind assistance and courtesies extended in this matter.

If you have any questions or wish to discuss this matter further, please do not hesitate to contact my office.

Respectfully submitted,

RONALD S. KOSSAR

RSK/sb
cc:    BMG Monroe I, LLC
        (sent via e-mail)


SENT VIA E-MAIL AND
HAND DELIVERED