New York State Department of State
Division of Corporations, State Records and Uniform Commercial Code
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231-0001
www.dos.ny.gov

# Local Law Filing

**(Use this form to file a local law with the Secretary of State.)**

Text of law should be given as amended. Do not include matter being eliminated and do not use italics or underlining to indicate new matter.

☐ County  ☐ City  ☒ Town  ☐ Village
*(Select one:)*

of _____

FILED
STATE RECORDS

AUG 10 2017

DEPARTMENT OF STATE

**Local Law No.** 4 _____  **of the year 20** 17 _____

**A local law** Extending a Local Law Implementing a Moratorium on the Development of Resdiential
*(Insert Title)*
Property of the Unincorporated Town of Monroe, New York

**Be it enacted by the** Town Board _____ **of the**
*(Name of Legislative Body)*

☐ County  ☐ City  ☒ Town  ☐ Village
*(Select one:)*

**of** Monroe _____ **as follows:**

**(If additional space is needed, attach pages the same size as this sheet, and number each.)**

**(Complete the certification in the paragraph that applies to the filing of this local law and strike out that which is not applicable.)**

1. **(Final adoption by local legislative body only.)**
I hereby certify that the local law annexed hereto, designated as local law No. 4 of 20 17 of the (~~County~~)(~~City~~)(Town)(~~Village~~) of Monroe was duly passed by the Town Board on July 31 20 17, in accordance with the applicable
*(Name of Legislative Body)*
provisions of law.

2. **(Passage by local legislative body with approval, no disapproval or repassage after disapproval by the Elective Chief Executive Officer*.)**
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20 ____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____ 20 ____, and was (approved)(not approved)
*(Name of Legislative Body)*
(repassed after disapproval) by the _____ and was deemed duly adopted
*(Elective Chief Executive Officer*)*
on _____ 20 ☐☐, in accordance with the applicable provisions of law.

3. **(Final adoption by referendum.)**
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20 ____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____ 20 ____, and was (approved)(not approved)
*(Name of Legislative Body)*
(repassed after disapproval) by the _____ on _____ 20 ____.
*(Elective Chief Executive Officer*)*
Such local law was submitted to the people by reason of a (mandatory)(permissive) referendum, and received the affirmative vote of a majority of the qualified electors voting thereon at the (general)(special)(annual) election held on _____ 20 ____, in accordance with the applicable provisions of law.

4. **(Subject to permissive referendum and final adoption because no valid petition was filed requesting referendum.)**
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20 ____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____ 20 ____, and was (approved)(not approved)
*(Name of Legislative Body)*
(repassed after disapproval) by the _____ on _____ 20 ____. Such local
*(Elective Chief Executive Officer*)*
law was subject to permissive referendum and no valid petition requesting such referendum was filed as of _____ 20 ____, in accordance with the applicable provisions of law.

---

* Elective Chief Executive Officer means or includes the chief executive officer of a county elected on a county-wide basis or, if there be none, the chairperson of the county legislative body, the mayor of a city or village, or the supervisor of a town where such officer is vested with the power to approve or veto local laws or ordinances.

**5. (City local law concerning Charter revision proposed by petition.)**
I hereby certify that the local law annexed hereto, designated as local law No._____ of 20_____ of the City of _____ having been submitted to referendum pursuant to the provisions of section (36)(37) of the Municipal Home Rule Law, and having received the affirmative vote of a majority of the qualified electors of such city voting thereon at the (special)(general) election held on _____ 20_____, became operative.

**6. (County local law concerning adoption of Charter.)**
I hereby certify that the local law annexed hereto, designated as local law No._____ of 20_____ of the County of _____ State of New York, having been submitted to the electors at the General Election of November _____ 20_____, pursuant to subdivisions 5 and 7 of section 33 of the Municipal Home Rule Law, and having received the affirmative vote of a majority of the qualified electors of the cities of said county as a unit and a majority of the qualified electors of the towns of said county considered as a unit voting at said general election, became operative.

**(If any other authorized form of final adoption has been followed, please provide an appropriate certification.)**
I further certify that I have compared the preceding local law with the original on file in this office and that the same is a correct transcript therefrom and of the whole of such original local law, and was finally adopted in the manner indicated in paragraph 1_____ above.

_____
Clerk of the county legislative body, City, Town or Village Clerk or officer designated by local legislative body

(Seal)

Date: August 1, 2017

INCORPORATED TOWN OF MONROE, NEW YORK
TOWN BOARD

LOCAL LAW NO. 4 of 2017
IMPLEMENTING AN EXTENSION OF THE MORATORIUM ON THE DEVELOPMENT
OF RESIDENTIAL PROPERTY OF THE
UNINCORPORATED TOWN OF MONROE, NEW YORK

**Section 1.      Legislative findings and intent.**

The Town Board ("Board") of the Incorporated Town of Monroe, New York ("Town") previously found that there was a critical and compelling need, in the public interest as set forth in its prior Resolution, to impose a moratorium on the development of all residential property construction in the Town, and, the Town did adopt such a Moratorium.

A. The Town previously undertook a Comprehensive Master Plan review in 2005 and enacted Local Laws with regard to the Comprehensive Master Plan ("CMP") in 2008. The 2005 CMP indicated:

> In order to remain useful, municipal plans require periodic review and revision, typically at five to ten-year intervals. Economic conditions and business practices, housing and land use needs, transportation conditions and environmental standards are in a constant state of change; so municipal Plans need to be re-evaluated in order to provide for current needs.

In 2015, the then Town Board confirmed that the Zoning Regulations were in need of amendment and that a rezoning process had been in effect for over half a decade. Moreover, a Draft Generic Environmental Impact Statement ("DGEIS") was prepared to evaluate proposed 2015 Chapter 57 Zoning Amendments. Accordingly, there was a need for a current CMP that reflects all current land use, socio-economic, community character and other impacts.

B. The Town Board previously found that the issues raised in The 2005 CMP adopted in 2008 warranted the Town consider a CMP at this time since economic and social impacts and trends have rendered assumptions and recommendations in the 2005 CMP in need of review and revision and that various ad hoc reviews and attempted amendments to the prior CMP did not provide for a Comprehensive Plan as New York State Town Law Section 272-a contemplates. A proper Town Comprehensive Plan would include various elements at the level of detail adapted to the requirements of the Town that would provide for the goal of the Town for smart and sustainable land use practices. This general statement of goals for smart sustainable land use in the Town requires that specific objectives, principles, policies and standards both in the immediate and long range development of the Town are necessary considering regional needs, the existing and proposed location and intensity of land uses, the conservation of agricultural uses, the historic and culture resources, natural resources and sensitive

environmental areas; the consideration of population, demographic and socio-economic trends and future projections including the community character as well as the need to review appropriate transportation facilities, public and private utilities and infrastructure, the existing housing resources and future housing needs, including affordable housing and the other factors that are required to be reviewed in any Comprehensive Master Plan and the Town needed to undertake a comprehensive review so that a current CMP reflects all Town Law requirements.

C. The Town Board previously found that factors in connection with development or potential development in the Town as well as the potential development of a land within the surrounding areas may have a significant impact upon the health, safety and general welfare of the Town, its inhabitants and visitors, and upon existing uses, public services, traffic and the environment, in general.

D. These circumstances required that the Town Board undertake, without delay, a focused review of the existing and anticipated residential uses in the Town and thereafter, an examination of the Town's zoning regulations that pertain to any such Districts that allow residential uses in order to determine whether these regulations should be amended or otherwise changed.

E. The Town Board had previously retained the services of the planning consulting firm of Nelson, Pope & Voorhis, LLC (the "Firm") to provide recommendations regarding the need to update the CMP, and to amend the zoning chapter and related land use regulations in a manner that is consistent with the CMP, as may be amended, to encourage lawful smart sustainable development in the Town, and that Firm having undertaken the services authorized by the Town and having requested information from government and other sources and that not all the needed government and other sources of information have been supplied so that recommendations for the CMP and other related amendments to the Zoning Code can be provided to the Town and the Firm needs additional time and information to complete the recommendations for the CMP to the Town and that said additional time is expected to be approximately ninety (90) days from the day this Moratorium is scheduled to expire.

F. The Town Board having previously adopted Local Law Nos. 2 and 4 of 2016 and Local Nos. 1 and 3 of 2017, which granted additional time for the Firm to provide recommendations to update the CMP and to amend the zoning chapter, and said Firm having undertaken the services authorized by the Town Board and having made significant progress to complete the services, the Town Board hereby finds that the required review and study by the Firm will not be completed within three (3) months from the effective date of Local Law No. 3 of 2017, and as provided by said Local Law, the Town Board may extend the period of this Moratorium for an additional three (3) months or such other and further time period that is reasonable in scope and duration and the Town Board also desires to narrow the scope of the moratorium restrictions.

G. The Town Board hereby finds that an extension and revision of the current Moratorium on the development of residential construction will best maintain the status quo during

the study period in order to prevent interim development from frustrating the objectives of the study and that said extension is expected to be the last extension of this Moratorium.

**Section 2.     Scope of extended moratorium.**

A. Extension of the Moratorium on the issuance of residential building permits and other actions: Except as provided herein at Paragraph 2(D) no building permit application shall be accepted, and no pending building permit application shall be further processed or approved, and no suspended or revoked building permit shall be reinstated for residential uses located within the unincorporated area of the Town of Monroe, except in accordance with this Local Law.

B. Extension of the Moratorium on actions by the Town Board, Planning Board and Zoning Board of Appeals: The Town Board, Planning Board and Zoning Board of Appeals shall not process, hear, rehear, approve or sign any new or pending preliminary or final site plan, preliminary or final subdivision, special permit, variance or other land use application or permit which relates directly or indirectly to residential construction, including but not limited to any grading permit, erosion and sediment control permit, wetland permit, sewer connection permit, floodplain development permit, water connection permit, which may be granted in association with residential construction.

C. Extension of the Moratorium and provisions of Town Law: To the extent that any provision of New York State Town Law imposes a time frame for action by a municipal entity, board or body so that a default approval will result from any inaction, the time for any action required by any Town Board, Body, Agency or other entity shall be and is hereby extended until this Moratorium and any as well as all extensions thereof have expired and have not been extended by the Town Board. Therefore, no default approval shall be deemed to have taken place with regard to any application for any approval concerning land use development by reason of this Moratorium being in effect.

D. Any of the following activities that do not require any approval or variance from the Planning Board or Zoning Board of Appeals, and only requiring issuance of a building permit from the Building Inspector, shall be permitted to be undertaken notwithstanding this Local Law extending the Moratorium:

  (1)   Construction of a private garage, not in excess of 500 square feet. Said building shall not be used for any other purpose than the storage of automotive vehicles;
  (2)   Construction of accessory structures, other than garages, not in excess of 300 square feet.
  (3)   Construction of outdoor decks, sidewalks, or porches;
  (4)   Construction of outdoor swimming pools;
  (5)   Installation of fences;
  (6)   Interior or exterior remodeling of a single family detached residential dwelling in existence and with a valid certificate of occupancy as of the effective

date this local law, which does not involve any change of use or increase the size of the building, including but not limited to window replacement, door replacement, plumbing improvements, new siding, removal of interior walls, and similar improvements;

(7) Installation or removal of home heating oil or propane tanks, in accordance with all applicable laws;

(8) Repair, involving the removal and installation of an individual well or in-ground septic system, for a dwelling in existence and with a valid certificate of occupancy as of the effective date of this law;

(9) Other minor improvements to dwellings or residential lots with an existing certificate of occupancy, after the Building Inspector has conferred with the Town Board, and the Town Board has rendered a determination that the improvement falls within the scope and nature of the exemptions listed herein;

(10) Single family homes with all final approvals requiring only issuance of a building permit.

Any person/entity claiming to fall under any of the above exemptions shall submit a letter to the Town Attorney setting forth the basis for the claimed exemption. The Town Attorney shall, within 10 days, respond and confirm if such exemption applies prior to any activity proceeding with respect to the subject property.

**Section 3.    Hardship review.**

A. Upon a showing of severe hardship (defined as no economic return on any land purchase), the Town Board may vary from the extension of the moratorium imposed in Subsection 2 hereof if it determines, in its absolute discretion, that granting such relief is consistent with the health, safety and general welfare of its inhabitants of the Town and their property and in harmony with the spirit and purposes of this Local Law.

B. When the Town Board considers such a variance as set forth herein at § 3(A) from the moratorium law, it should consider the following:

(1) In considering a variance, the Town Board may request the following information in order to render a decision:

(a) studies, reports, resolutions of preliminary and/or final approval, issued with or without conditions;

(b) any SEQRA documents and findings statement, Negative Declaration with or without conditions, including generic or supplemental environmental impact statements which may have cumulatively evaluated the impacts associated with certain land use applications;

(c) any special exception permit plan, site plan or subdivision plan, and map notes; all representations of the developer/applicant with regard to the dimensional standards of the zoning district within which the development is located, including but not limited to lot coverage, impervious surface coverage, residential building size, occupancy and other design parameters which served as the basis for SEQRA review, Stormwater Pollution Prevention Plan (SWPPP)

review, and infrastructure approval and design, including methods of water supply, wastewater disposal, stormwater control, drainage, and transportation approvals;

(d) any violations which have been issued, and the status of same;

(e) any other related documents upon which the Planning Board or Zoning Board of Appeals relied in issuing an approval, and whether a variance issued from the moratorium law will be issued consistent with all resolutions of approval and SEQRA findings;

(f) the status of other agency permits and approvals, and whether those approvals or permits, if not issued, will be issued during the time period established by the moratorium law. The Town Board may require that the developer/applicant submit evidence that the approval or permit will be issued during the moratorium time period;

(g) whether the developer/applicant is requesting a variance from this moratorium law for a project which proposes to vary from, or does not meet all previous decisions rendered by the Planning Board or Zoning Board of Appeals.

(2) It shall be the obligation of the developer/applicant to furnish these documents to the Town Board during the appeal process. The Town Board shall specifically consider, among other factors: whether the proposed land use or development is and will continue to be consistent with and comply with all previous decisions and findings; and, whether the developer/applicant is presently in front of the Planning Board or Zoning Board of Appeals requesting a waiver from any previous approval or finding, and the type of waiver being sought.

(3) The Town Board may limit a variance from the development moratorium to specific prescribed activities, including but not limited to, activities which allow a developer/applicant to meet any conditions to remediate a violation.

C. An application for variance for this moratorium shall be made by the applicant supplying to the Town Clerk not more than thirty (30) days after enactment of this moratorium extension a Verified Petition signed by the owner of the subject property and any applicant for Town approvals setting forth all of the information required pursuant to Section 3(B) herein together with such additional information that the applicant or property owner seeking a variance desires to obtain from the Town Board. Within twenty (20) days of receipt of said Verified Petition, the Town Clerk shall cause a Public Hearing Notice to be published providing for a Public Hearing no less than twenty (20) days after the application for a variance is received by the Town Clerk, but in no event more than forty (40) days after the application for a variance is so received unless otherwise mutually agreed. The applicant shall have an opportunity to produce such evidence, documents and call witnesses in support of the application for a variance from this moratorium at the time of the Public Hearing established by the Town Board. No more than thirty (30) days after the close of the Public Hearing the Town Board shall act to either grant, deny or otherwise consider the application for a variance.

**Section 4.**      **Application of Law to existing land use provisions.**

This Local Law shall supersede any and all Town Law or other provisions of law rule or regulation that require specific action upon an application before the Planning Board or Zoning Board of Appeals. This moratorium is being adopted by Local Law, using Municipal Home Rule Law procedures and this moratorium suspends any subdivision approval time requirements and also supersedes and suspends any "default approval" provision of the Subdivision statutes of the Town Law or any other applicable laws. This moratorium supersedes any Town Law or Town Code provisions to the contrary that require any specific action on an application by any Town Board, Planning Board, Zoning Board of Appeals or other land use Boards within the Town. This moratorium Law also supersedes any New York State or Local Laws, rules or regulations pertaining to the grant of any variance authority by the Zoning Board of Appeals, it being the intention of this Local Law that any grant of variances to any other Boards or bodies than this Town Board is hereby superseded by this Local Law so as to vest any variance approval solely in the Town Board pursuant to this Local Law. This Local Law shall be in supplement to and not in derogation of the goals of the prior Local Law that enacted the Moratorium.

**Section 5.     Casualty exemption.**

The provisions of this Local Law shall not apply to the restoration or replacement of any building or portion thereof which shall have been damaged or destroyed by fire or other casualty. This exemption, however, shall not be applicable to the restoration or replacement of any building which, prior to the effective date of this Local Law, shall have constituted a non-conforming building under the Zoning Code of the Town, nor shall this Subsection 4 in any way prevent the extinguishment of any non-conforming use as a result of casualty destruction.

**Section 6.     Expiration of moratorium.**

This Local Law shall expire without further action of the Town Board upon adoption of an updated comprehensive master plan and related zoning amendments, or three (3) months following the effective date hereof, whichever shall occur first, and thereafter shall be of no force or effect. However, if it appears that any required review and study referred to hereinabove will not be completed within three (3) months from the effective date of this Local Law, the Town Board may, by Local Law, extend the period of this moratorium for an additional three (3) months or such other and further time period that is reasonable in scope and duration.

**Section 7.     State Environmental Quality Review Act.**

Pursuant to 6 NYCRR 617.5 (30) this Local Law is classified as Type II action which requires no further review under the State Environmental Quality Review Act.

**Section 8.     Severability.**

If any clause, sentence, paragraph, section, or part of this Local Law shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder hereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part hereof directly involved in the controversy in which such judgment shall have been rendered.

**Section 9.    Effective date.**

This Local Law shall become effective on August 5, 2017 or upon filing with Secretary of State, whichever date is later.