

Steven Barshov
Direct Dial: (646) 378-7229
sbarshov@sprlaw.com

BY EMAIL

August 26, 2016

Town Board of the Town of Monroe
1465 Orange Turnpike
 Monroe, NY 10950

Re:   Pending Application for Exemption From Moratorium by BMG Monroe I, LLC

Dear Supervisor Doles and Town Boardmembers Cardone, Colon, McGinn and McQuade,

As you know, Sive, Paget & Riesel, P.C. ("SPR") is co-counsel in connection with the pending application by BMG Monroe I, LLC ("BMG") now pending before the Town Board of the Town of Monroe ("Town Board") for an exemption/variance (the "Moratorium Exemption Application") from Town of Monroe Local Law 1 of 2016 (the "Town Moratorium Law").  SPR is also counsel to Keen Equities, LLC ("Keen") in connection with its pending application for subdivision approval before the Village of South Blooming Grove (the "Village").  As you are no doubt aware, the Village Board of the Village of South Blooming Grove (the "Village Board") recently proposed adoption of a moratorium (the Proposed Village Moratorium").  As was widely reported in the local media recently, United States Bankruptcy Judge Lord issued a temporary restraining order prohibiting the Village Board from conducting a public hearing on the Proposed Village Moratorium pending a further order from the United States Bankruptcy Court for the Eastern District of New York.  On behalf of SPR, I appeared in the recent Bankruptcy Court proceedings, including at the oral argument before Judge Lord which occurred this past Monday.  Thus, the matters as to which I am about to write, are ones as to which I have personal and direct knowledge.

As you are likely aware, Dennis Lynch, Esq., is not only your Town Board's counsel, but he is also special land use counsel to the Village.  As such, he was given notice of the temporary restraining order sought by Keen and appeared on behalf of the Village at the oral argument before Judge Lord this past Monday.  I personally heard the statements and representations Mr. Lynch made to Judge Lord regarding the Proposed Village Moratorium.  For reasons that will be readily apparent shortly, Mr. Lynch's statements and representations to Judge Lord in an official judicial proceeding mandate the immediate exemption of BMG from the Town Moratorium Law. Failure to grant such an exemption will result in litigation and a claim against each member of the Town Board individually that the failure to exempt BMG from the Town Moratorium would be a knowing and intentional deprivation of BMG's constitutional property rights.

A comparison between the Town Moratorium Law and the Proposed Village Moratorium (collectively, the "Two Moratoriums") confirm that in all material respects they are virtually identical:

1. The Two Moratoriums have the identical structure, including the following identical section titles which are set forth in the exact same order:
    a. Section 1. Legislative findings and intent.
    b. Section 2. Scope of moratorium.
    c. Section 3. Hardship review.
    d. Section 4. Application of Law to existing land use provisions.
    e. Section 5. Casualty exemption.
    f. Section 6. Expiration of moratorium.
    g. Section 7. State Environmental Quality Review Act.
    h. Section 8. Severability.
    i. Section 9. Effective date.

2. Section 1 of the Two Moratoriums begins with the identical finding stated in identical words:

> The Town Board and the Village Board both find "that there is a critical and compelling need, in the public interest as set forth herein, to impose a moratorium on the development of all residential property construction in the [Town][*Village*].[1]

3. In Section 1.A, the Two Moratoriums contain identical statements regarding periodic review and revision of municipal comprehensive plans:

> In order to remain useful, municipal plans require periodic review land revision, typically at five to ten-year intervals. Economic conditions and business practices, housing and land use needs, transportation conditions and environmental standards are in a constant state of change; so municipal Plans need to be re-evaluated in order to provide for current needs [. . . .][2] Accordingly, the need for a current CMP that reflects all current land use, socio-economic, community character and other impacts is required.

4. In Section 1.B, again the Two Moratoriums are substantively identical regarding the contents of a comprehensive plan update:

> A proper [Town][*Village*] Comprehensive Plan would include various elements at the level of detail adapted to the requirements of the [Town][*Village*] that would provide for the goal of the [Town][*Village*] for smart and sustainable land use [practices.] [ ][3] This general statement of goals for smart sustainable land use in

---

[1] Differences in the text of the Two Moratoriums are set forth in brackets. The language in the Town Moratorium Law is underlined and the language in the Proposed Village Moratorium is in italics.

[2] Language in the Town Moratorium Law which is not relevant to the Village and is not reprinted is noted in the following format: [. . . .].

[3] The word "practices" and the period following it were not included in the Proposed Village Moratorium. The sentence in the Proposed Village Moratorium ends without a period and without the word "practices" at the end. It appears that the cut and paste from the Town Moratorium Law into the Proposed Village Moratorium cut off the last word of the sentence.

>the [Town][*Village*] requires that specific objectives, principles, policies and standards both in the immediate and long range development of the [Town][*Village*] are necessary considering regional needs, the existing and proposed location and intensity of land uses, the conservation of agricultural uses, the historic and culture resources, natural resources and sensitive environmental areas; the consideration of population, demographic and socio-economic trends and future projections including the community character as well as the need to review appropriate transportation facilities, public and private utilities and infrastructure, the existing housing resources and future housing needs, including affordable housing and the other factors that are required to be reviewed in any Comprehensive Master Plan and the [Town][*Village*] needs to undertake a comprehensive review so that a current CMP reflects all [Town] [ ] Law requirements.

5.  Remarkably, in Section 1.C, the Town and Village Boards both have articulated the identical motivation for their respective moratoriums, expressed in the precisely matching words:

>The [Town][*Village*] Board finds that factors in connection with development or potential development in the [Town][*Village*] as well as the potential development of a land within the surrounding areas may have a significant impact upon the health, safety and general welfare of the [Town][*Village*], its inhabitants and visitors, and upon existing uses, public services, traffic and the environment, in general.

6.  Again, in Section 1.D., the Town and Village Boards, like two peas in a pod, use indistinguishable words to conclude that they both must "without delay" revise their plans and zoning:

>These circumstances require that the [Town][*Village*] Board undertake, without delay, a focused review of the existing and anticipated residential uses in the [Town][*Village*] and thereafter, an examination of the [Town][*Village*] zoning regulations that pertain to any such Districts that allow residential uses in order to determine whether these regulations should be amended or otherwise changed.

7.  In Section 1.F, yet once more with identical words, the Town and Village Boards both conclude that a moratorium on residential development is needed to prevent such development from frustrating the objectives of the contemplated study:

>The [Town][*Village*] Board hereby finds that the adoption of a moratorium on the development of residential construction will best maintain the status quo during the study period in order to prevent interim development from frustrating the objectives of the study.

3

8. Not only are the stated bases of the Two Moratoriums indistinguishable, but so is their scope. The Two Moratoriums prohibit the exact same actions using identical verbiage:

> Section 2. Scope of moratorium.
>   A. Moratorium on the issuance of residential building permits and other actions: Except as provided herein at Paragraph 2(D) no building permit application shall be accepted, and no pending building permit application shall be further processed or approved, and no suspended or revoked building permit shall be reinstated for residential uses located within the [unincorporated area of the Town of Monroe][*Village*], except in accordance with this Local Law.
>   B. Moratorium on actions by the [Town][*Village*] Board, Planning Board and Zoning Board of Appeals: The [Town][*Village*] Board, Planning Board and Zoning Board of Appeals shall not process, hear, rehear, approve or sign any new or pending preliminary or final site plan, preliminary or final subdivision, special permit, variance or other land use application or permit which relates directly or indirectly to residential construction, including but not limited to any grading permit, erosion and sediment control permit, wetland permit, sewer connection permit, floodplain development permit, water connection permit, which may be granted in association with residential construction.
>   C. Moratorium and provisions of [Town][*Village*] Law: To the extent that any provision of New York State [Town][*Village*] Law imposes a time frame for action by a municipal entity, board or body so that a default approval will result from any inaction, the time for any action required by any [Town][*Village*] Board, Body, Agency or other entity shall be and is hereby extended until this moratorium and any as well as all extensions thereof have expired and have not been extended by the [Town][*Village*] Board. Therefore, no default approval shall be deemed to have taken place with regard to any application for any approval concerning land use development by reason of this moratorium being in effect.
>   D. Any of the following activities that do not require any approval or variance from the Planning Board or Zoning Board of Appeals, and only requiring issuance of a building permit from the Building Inspector shall be permitted to be undertaken notwithstanding this Local Law:
>     (1) Construction of a private garage, not in excess of 500 square feet. Said building shall not be used for any other purpose than the storage of automotive vehicles;
>     (2) Construction of outdoor decks, sidewalks, or porches;
>     (3) Construction of outdoor swimming pools;
>     (4) Installation of fences;
>     (5) Interior or exterior remodeling of a single family detached residential dwelling in existence and with a valid certificate of occupancy as of the effective date this local law,

4

which does not involve any change of use or increase the size of the building, including but not limited to window replacement, door replacement, plumbing improvements, new siding, removal of interior walls, and similar improvements;

(6) Installation or removal of home heating oil or propane tanks, in accordance with all applicable laws;

(7) Repair, involving the removal and installation of an individual well or in-ground septic system, for a dwelling in existence and with a valid certificate of occupancy as of the effective date of this law;

(8) Other minor improvements to dwellings or residential lots with an existing certificate of occupancy, after the Building Inspector has conferred with the [Town][*Village*] Board, and the [Town][*Village*] Board has rendered a determination that the improvement falls within the scope and nature of the exemptions listed herein.

9. By now it should come as no surprise that the grounds for an exemption or variance from the Two Moratoriums are also identical:

Section 3. Hardship review.

A. Upon a showing of severe hardship (defined as no economic return on any land purchase), the [Town][*Village*] Board may vary from the moratorium imposed in Subsection 2 hereof if it determines, in its absolute discretion, that granting such relief is consistent with the health, safety and general welfare of its inhabitants of the [Town][*Village*] and their property and in harmony with the spirit and purposes of this Local Law.

B. When the [Town][*Village*] Board considers such a variance as set forth herein at § 3(A) from the moratorium law, it should consider the following:

(1) In considering a variance, the [Town][*Village*] Board may request the following information in order to render a decision:

(a) studies, reports, resolutions of preliminary and/or final approval, issued with or without conditions;

(b) any SEQRA documents and findings statement, Negative Declaration with or without conditions, including generic or supplemental environmental impact statements which may have cumulatively evaluated the impacts associated with certain land use applications;

(c) any special exception permit plan, site plan or subdivision plan, and map notes; all representations of the developer/applicant with regard to the dimensional standards of the zoning district within which the development is located, including but not limited to lot coverage, impervious surface coverage, residential building size, occupancy and other design parameters which served as the basis for SEQRA review, Stormwater Pollution Prevention Plan (SWPPP) review, and infrastructure

approval and design, including methods of water supply, wastewater disposal, stormwater control, drainage, and transportation approvals;

(d) any violations which have been issued, and the status of same;

(e) any other related documents upon which the Planning Board or Zoning Board of Appeals relied in issuing an approval, and whether a variance issued from the moratorium law will be issued consistent with all resolutions o£ approval and SEQRA findings;

(f) the status of other agency permits and approvals, and whether those approvals or permits, if not issued, will be issued during the time period established by the moratorium law. The [Town][*Village*] Board may require that the developer/applicant submit evidence that the approval or permit will be issued during the moratorium time period;

(g) whether the developer/applicant is requesting a variance from this moratorium law for a project which proposes to vary from, or does not meet all previous decisions rendered by the Planning Board or Zoning Board of Appeals.

(2) It shall be the obligation of the developer/applicant to furnish these documents to the [Town][*Village*] Board during the appeal process. The [Town][*Village*] Board shall specifically consider, among other factors: whether the proposed land use or development is and will continue to be consistent with and comply with all previous decisions and findings; and, whether the developer/applicant is presently in front of the Planning Board or Zoning Board of Appeals requesting a waiver from any previous approval or finding, and the type of waiver being sought.

(3) The [Town][*Village*] Board may limit a variance from the development moratorium to specific prescribed activities, including but not limited to, activities which allow a developer/applicant to meet any conditions to remediate a violation.

C. An application for variance for this moratorium shall be made by the applicant supplying to the [Town][*Village*] Clerk not more than sixty (60) days after enactment of this moratorium a Verified Petition signed by the owner of the subject property and any applicant for [Town][*Village*] approvals setting forth all of the information required pursuant to Section 3(B) herein together with such additional information that the applicant or property owner seeking a variance desires to obtain from the [Town][*Village*] Board. Within ten (10) days of receipt of said Verified Petition, the [Town][*Village*] Clerk shall cause a Public Hearing Notice to be published providing for a Public Hearing no less than twenty (20) days after the application for a variance is received, but in no event more than forty (40) days after the application for a variance is received. The applicant shall have an opportunity to produce such evidence, documents and call witnesses in support of the

> application for a variance from this moratorium at the time of the Public Hearing established by the [Town][*Village*] Board. No more than thirty (30) days after the close of the Public Hearing the [Town][*Village*] Board shall act to either grant, deny or otherwise consider the application for a variance.

The foregoing lengthy verbatim quotes confirm that in all substantive respects the Town Moratorium Law and the Proposed Village Moratorium are identical.  Therefore, the Town Board needs to be aware of and focus closely on the fact that its counsel stated in open court to Judge Lord <u>that a property owner with vested rights is exempt from the Proposed Village Moratorium.</u>  If required by the Town Board I would readily confirm the foregoing statement under oath in an affidavit.

Plainly, since it is Mr. Lynch's unequivocal legal conclusion that a property owner with vested rights would be exempt from the Proposed Village Moratorium, the same conclusion must apply to the Town Moratorium since the Two Moratoriums are identical in all substantive respects. Whether Mr. Lynch has or has not previously advised the Town Board of this legal conclusion, the Town Board is now fully aware of it by virtue of this letter.

Based on the stated opinion of the Town Board's own counsel regarding the identical moratorium he authored, there is no colorable basis for the Town Board to continue this charade any longer.  BMG's rights have undeniably vested.  It has preliminary and final subdivision approvals and has spent very substantial sums in reliance on those approvals, including ongoing construction of infrastructure, payments of fees to the Town (which the Town has accepted), etc. ***Any further delay and any failure to exempt BMG from the Town Moratorium will result in litigation in which Town Board members will be named individually for an intentional and knowing deprivation of BMG's vested and protected constitutional property rights.***

Finally, after the Town Board closed the public hearing on the Moratorium Exemption Application, I requested that the Town Board set a date at a future Town Council meeting when it would vote on the Moratorium Exemption Application.  In making this request, I stated both the need of BMG for a decision, as well as a personal basis for knowing when the Town Board would vote on the Moratorium Exemption Application.  I was assured both publicly by the Town Board and privately by a Town Board member that the matter would shortly be set for decision after consultation with the Town's attorney.  Notwithstanding that weeks have now gone by and there has been more than ample opportunity to discuss the matter with the Town's counsel, there still has not been a date set for the decision on the pending Moratorium Exemption Application.  This is unacceptable.

                                                        Yours truly,

                                                        *Steven Barshov*

                                                        Steven Barshov

cc:    Dennis Lynch, Esq.
         Ron Kossar, Esq.