UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __06/09/2022__
```

HIGHVIEW PROPERTIES D.H.F. INC.,

                              Plaintiff,

     -against-

TOWN OF MONROE; TOWN OF MONROE
TOWN BOARD; HARLEY DOLES, *as former
Town Supervisor in his official capacity*;
ANTHONY CARDONE, *as Town Supervisor and
individually*; MARY BINGHAM, *as Monroe Town
Boardmember*; RICHARD COLON, *as Monroe
Town Boardmember and individually*; MICHAEL
MCGINN, *as Monroe Town Boardmember and
individually*; GERARD MCQUADE, JR., *as
Monroe Town Boardmember and individually*; and
AUDRA SCHWARTZ, *as Town of Monroe
Planning Board Chairperson*,

                              Defendants.

No. 18 Civ. 867 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Highview Properties D.H.F. Inc., ("Highview"), the owner and developer of a

residential subdivision project called Henry Farms Realty Subdivision (the "Henry Farms

Project"), brings this action under 42 U.S.C. §§ 1983 and 1985, the Takings Clause, the Fair

Housing Act ("FHA"), 42 U.S.C. § 12101, *et seq.*, and the New York State Constitution and

common law, against Defendants Town of Monroe (the "Town"); the Town of Monroe Town

Board (the "Town Board"); Harley Doles, as former Town Supervisor in his official capacity;

Anthony Cardone, as Town Supervisor and individually; Mary Bingham, as Monroe Town

Boardmember; Richard Colon, as Monroe Town Boardmember and individually; Michael

McGinn, as a Monroe Town Boardmember and individually; Gerard McQuade, Jr., as Monroe

Town Boardmember and individually; and Audra Schwartz, as Town of Monroe Planning Board

Chairperson, (collectively, "Defendants"). (Compl. ¶ 2, ECF No. 1.)

Highview alleges that Defendants—motivated by religious discrimination against Hasidic Jews—deprived it of its due process rights by enacting legislation that prevents it from developing a plot of land within the Town and making housing available to Hasidic Jews. (*Id.* ¶¶ 1–16.) Specifically, Highview alleges that Defendants (i) adopted a temporary moratorium on all land subdivisions that had already received conditional final approval; (ii) denied its exemption/variance application from the moratorium; and (ii) enacted local laws targeting Highview and the Hasidic Jewish community, such as a zoning law that significantly reduces the permitted density in residential areas of the Town, as well as a law restricting accessory apartments. (*Id.* ¶¶ 4–16.)

Presently pending before the Court are Defendants' motions to dismiss Highview's Complaint under Federal Rules of Civil Procedure 12(b)(1) and (6). (ECF Nos. 85 and 88.) For the following reasons, the Court GRANTS Defendants' motions to dismiss.

## BACKGROUND

### I. Factual Background

The following facts are derived from the Complaint and the documents referenced therein and are taken as true and constructed in the light most favorable to Highview for the purposes of this motion.

Highview is a corporation organized and existing under the laws of the State of New York that is the current owner and developer of the Henry Farms Project, a 134-acre tract of undeveloped land located within the Town of Monroe. (Compl. ¶¶ 2, 33.) Henry Farms is the site of a conditionally approved residential development, which resulted from the culmination of a sixteen-year review process by Town officials. (*Id.* ¶¶ 5, 22.)

A.      The Town of Monroe

The Town Board is the Town's legislative body. (*Id.* ¶ 35.) New York Town Law vests in the Town Board the authority to prepare, amend, and adopt the Town's comprehensive plan. N.Y. Town Law § 272-a(4), (7). "Among the most important powers and duties granted by the legislature to a town government is the authority and responsibility to undertake town comprehensive planning and to regulate land use for the purpose of protecting the public health, safety and general welfare of its citizens." N.Y. Town Law § 272-a(1)(b).

The law defines a town comprehensive plan as "the materials, written and/or graphic . . . that identify the goals, objectives, principles, guidelines, policies, standards, devices and instruments for the immediate and long-range protection, enhancement, growth and development of the town located outside the limits of any incorporated" part of a town. N.Y. Town Law § 272-a(2)(a). New York Town Law mandates that "[a]ll town land use regulations must be in accordance with [the] comprehensive plan." N.Y. Town Law § 272-a(11)(a).

B.      SEQRA Review Process and Conditional Approval of the Henry Farms Project

"In May 2000, an application was made to the Town Board to subdivide the [Henry Farms Project] site into a residential cluster subdivision." (Compl. ¶ 48.) The Henry Farms Farm project involves 65 single family lots, 50 multiple dwelling townhouse units, and a commercial lot. (*Id.* ¶ 46.)

The application for the Henry Farms Project triggered the New York State Environmental Quality Review Act ("SEQRA"). (*Id.* ¶ 49.) "SEQRA requires local planning boards to consider the potential environmental impact of a proposed project before granting site plan approval." *Lucas v. Plan. Bd. of Town of LaGrange*, 7 F. Supp. 2d 310, 314–15 (S.D.N.Y. 1998) (citing 6 N.Y.C.R.R. § 617.1; ECL 8–0103, subd. 7). SEQRA's statutory scheme "attempts to achieve this substantive goal by designating the public agency most significantly involved in a particular

project as the 'lead' agency and by obliging that body to go through a series of procedures intended to compel consideration of the environmental consequences of any determination which finally approves the project." *Id.* at 315.

The Town Board acted as the SEQRA Lead Agency for the project, which filed a Final Environmental Impact Statement ("FEIS")[1] on February 13, 2004. (Compl. ¶ 49.) The SEQRA review culminated on May 2, 2004, when the Town Board issued its Lead Agency SEQRA Findings Statement. (*Id.* ¶ 50.)

C.     *Review of the Town's Comprehensive Master Plan in 2005*

In 2005, the Town Board established a committee to a review the Town's Comprehensive Master Plan ("CMP"), which had last been updated six years before in 1998. (*See* Dorfman Decl., Ex. A, "2005 CMP Update," ECF No. 86-1.) In May 2008, the Town Board adopted an update to the CMP, entitled "Master Plan – Comprehensive Update 2005" (the "2005 CMP Update") based on the results of such review. (*Id.*) The 2005 CMP Update provides:

> As noted in Section II of this document, there should be regularly scheduled review taking place typically on a five to ten year basis in order to reconsider this Plan and determine whether it adequately address the Town's needs. Given the development potential and relatively limited availability of land in the Town of Monroe, this Plan recommends that the next review should take place within a five year time frame.[2]

---

[1] If an application will likely have a significant adverse impact on the environment, then an "environmental assessment form" must be compiled, *see* 6 NYCRR 617.6, and a determination made as to whether the action "may include the potential for at least one significant adverse environmental impact." *Lucas*, 7 F. Supp. 2d at 315 (citing 6 NYCRR 617.7(a)). In such case, the SEQRA lead agency issues a "positive declaration" and either the agency or the applicant—at the latter's option—must prepare a DEIS. *Id.* (citing ECL 8–0109, subds. 2, 4; 6 N.Y.C.R.R. §§ 617.7).

 If the draft statement is accepted by the agency "as satisfactory with respect to scope, content and adequacy," it is then circulated to any other agencies having an interest in the proposal, and "interested members of the public." *Id.* (citing ECL 8–0109, subds. 4, 5; 6 NYCRR 617.8(b), 617.10). After allowing a period for comment, the lead agency must prepare a FEIS and circulate it in the same manner as the draft statement. *Id.* (citing ECL 8–0109, subds. 4, 5, 6; 6 NYCRR 617.10 (h)).

[2] Under New York Town Law § 272-a(10), "[t]he town board shall provide, as a component of such proposed comprehensive plan, the maximum intervals at which the adopted plan shall be reviewed.").

(*Id.*, Ex. A at 131.)

D.      *United Monroe, its discriminatory animus against the Hasidic Jewish community, and the November 2015 Town Board Election*

In 2013, some residents of created a citizens' opposition group called United Monroe. (Compl. ¶ 68.) According to Highview, the purpose of United Monroe was to "prevent the Hasidic Jewish community from purchasing housing in or moving to the Town, and to prevent the development of housing that would accommodate the needs of the Hasidic Jewish community." (*Id*. ¶ 70.) Highview claims that United Monroe has "vexatiously opposed" residential projects in the Town after learning that Mr. Ziggy Brach, a developer who United Monroe believed to be from Kiryas Joel (an adjacent municipality inhabited predominantly by the Hassidic Jewish community) had an interest in the project because it would make housing available to the Hasidic Jewish community. (*Id.* ¶¶ 68–69, 71.)  Highview claims that the comments from United Monroe's leaders and supporters reveal anti-Hasidic animus because the Henry Farms Project "could be purchased by Orthodox Jewish families in need of housing in the region." (*Id.* ¶ 84.)

Highview claims that United Monroe doubled down on its anti-Hasidic Jewish platform for the November 2015 Town Board election. (*Id.* ¶ 85.) It claims that Defendants McGinn and Cardone ran for the Town Board on the United Monroe party line and overly supported United Monroe's anti-Hasidic Jewish principles. (*Id.* ¶¶ 86–88.) Ultimately, McGinn and Cardone were elected to the Town Board. (*Id.* ¶ 89.)

E.      *Henry Farms Project Receives a Conditional Final Subdivision Approval and the Town's Retention of a Planner*

On April 14, 2015, the Town Board issued a Conditional Final Subdivision Approval for the Henry Farms Project to Highview as set forth in the "Resolution of Final Subdivision, Site Plan, Special Exception Use Permit, Local Wetlands Disturbance Permit for Henry Farms Realty Subdivision [Highview Properties D.H.F., Inc.]" (the "Resolution"). (*Id.*, Ex. 15, at 1 ¶ 3, ECF No.

1-15.) The Resolution approved a subdivision of the Henry Farms Project into 65 single family detached residential dwelling lots and 50 townhouse units, once commercial lot (for future development) and six lots to be dedicated to the Town. (*Id.*, Ex. 15, at 2 ¶ 4.)

Almost a year later, in March 2016, the Town Board retained Nelson, Pope, and Voorhees, LLC (the "Planner"), an environmental planning and consulting firm, to evaluate the 2005 CMP Update and make recommendations as to the need for an update. (Dorfman Decl., Ex. B. at 3, ECF No. 86-2.) The Planner recommended a review and potential update, as well as the adoption of a moratorium pending that review. (*Id.*, Ex. C at 3, ECF No. 86-3.)

F.     *The Town Board Adopts a Temporary Moratorium on all Residential
       Development Ancillary to a CMP Review*

The next month, in April 2016, the Town Board adopted Local Law No. 1 of 2016, entitled "A Local Law Implementing a Moratorium on the Development of Residential Property of the Unincorporated Town of Monroe, New York" (the "Moratorium Law"). (Compl., Ex. 8, ECF No.1-8.) The Town Board adopted the Law to maintain the status quo during its review of the CMP and to prevent interim development from frustrating the objectives of that review. (*Id.* at 5.) The Town Board did not exempt any land subdivisions that had already previously received conditional final approval. (*Id.* ¶ 187.)

The Moratorium Law authorized the Town Board to grant variances from the moratorium in limited circumstances. (*Id.*, Ex. 8 at 6–7 § 3(A).) Specifically, the law provided that "[u]pon a showing of severe hardship (defined as no economic return on any land purchase), the Town Board may vary from the moratorium . . . if it determines, in its absolute discretion, that granting such relief is consistent with the health, safety and general welfare of its inhabitants of the Town and their property and in harmony with the spirit and purpose of this Local Law." (*Id.*)

G.       *Highview Applies for Exemption from the Moratorium Law*

At the time the Town Board enacted the moratorium, Highview had not satisfied all of the conditions of approval. At least five conditions remained outstanding, including (1) creation of a drainage district, (2) entering into a Public Improvement Security Agreement ("PISA") with the Town Board, (3) posting financial security, (4) dedication of open space, and (5) obtaining sidewalk waivers. (*Id.* ¶ 59.)

Under New York Town Law, the creation of a drainage district is a discretionary, legislative act of the Town Board. *See* N.Y. Town Law § 190 ("Upon a petition . . . , the town board of any town may establish or extend in said town a . . . drainage [district] . . . ."). It requires a formal petition, a public hearing, and environmental review. *See id.* §§ 191, 193. In deciding whether to grant a petition to create a drainage district, the Town Board must determine, *inter alia*, "whether it is in the public interest to grant in whole or in part the relief sought." *Id.* § 194(1)(d).

In May 2016, Highview applied for an exemption from the moratorium. (Compl. ¶ 158.) Following its review of the application and a public hearing, the Town Board determined that Highview did not show the required severe hardship and voted to deny the application in September 2016. (*Id.* ¶ 179.) Defendant Colon was not present and did not vote on Highview's application. (*Id.* ¶ 177.)

H.       *Highview Files Suit in State Court to Challenge and Seek Exemption from the Moratorium*

In January 2017, Highview filed a hybrid Article 78 Petition/Verified Complaint challenging the Town's moratorium and seeking review of the Town Board's denial of its application for an exemption (the "State Action"). *See Highview Properties D.H.F., Inc. v. Town of Monroe, et al.*, Index No. 298/2017 (Sup. Ct. Orange Cnty.); (*see also* Dorfman Decl., Ex. D, ECF No. 86-4.) In the State Action, Highview alleges that "the Moratorium is unconstitutional and

7

invalid on its face and as applied," and it seeks a declaratory judgment to that effect. (*Id.*, Ex. D ¶ 2.) It alleges the Town Board's denial of its exemption application was "arbitrary and capricious" and seeks an order vacating the decision. (*Id.*, Ex. D at 16.)

I.    *The Town Board Adopts Amendments to Certain Provisions of its Zoning Code; The Moratorium Expires*

In February 2017, the Town Board passed a local law amending the Town's Accessory Apartment law. (Compl. ¶ 199.) The law's stated purpose is to

> provide an opportunity for the development of small rental housing units designed to meet the special housing needs of senior citizens, single persons and small households; to ensure the retention of single-family neighborhood character; allow the more efficient use of the Town's housing stock with minimal impact on community character and resources; and provide economic support for existing resident families.

(*Id.*, Ex. 18 at 4 § 57-21.) Specifically, the revised Accessory Apartment law allows "any owner occupying a single-family dwelling" to apply to the Town Board for approval to add an accessory apartment to his or her home, provided the apartment is no more than 750 square feet or 30% of the square footage of the original home, whichever is less. (*Id.* ¶ 199.)

Highview claims that the true purpose of the Accessory Apartment law is to "make housing unavailable to the Hasidic Jewish community" by making "accessory apartments unavailable" to them because, due to "their religious and cultural practices, Hasidic Jews generally have larger families and require more housing space." (*Id.* ¶ 200.) Highview claims that United Monroe had promised that McGinn and Cardone "would address the accessory apartment problem," a promise which they followed throughout "less than two months" after they took their seats in the Town Board.  (*Id.* ¶ 204.)

On November 20, 2017, the Town Board adopted an update to its CMP and amendments to its zoning code. (*Id.* ¶ 206.) As a direct effect of these legislative acts, the moratorium expired. (*See id.*, Ex. 14 at 9, ECF No. 1-14 ("Section 6. Expiration of moratorium. This Local Law shall

expire without further action of the Town Board upon adoption of a comprehensive plan update and related zoning amendments, or three (3) months following the effective date hereof, whichever shall occur first, and thereafter shall be of no force or effect.")

    *J.    Highview Amends its Pleadings in the State Action*

In December 2017, Highview filed an amended pleading in the State Action to challenge and seek exemption from the Accessory Apartment and amended zoning laws. (Dorfman Decl., Ex. F, ECF No. 86-6.) It seeks, in part, a judgment declaring it is entitled to a "Special Fact Exception" for exemption from these laws. (*Id.*, Ex. F ¶¶ 66–69.) The State Action remains pending and is appears to be now on appeal. *See In the Matter of Highview Properties, D.H.F., Inc., respondent, v. Town of Monroe, et al., appellants.*, No. 2021-04347, 298/2017, 2022 WL 537268 (N.Y. App. Div. Feb. 23, 2022).

## II. Procedural Background

On January 31, 2018, Highview filed the instant lawsuit against Defendants. (Compl., ECF No. 1.) On March 28, 2018, Defendants first sought leave to file motions to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 40 & 42.) Although the parties filed their respective briefing in September 2018, they later informed the Court that they had reached a settlement in principle on October 10, 2020. (*See* ECF No. 71.) Consequently, the Court denied Defendants' initial motions to dismiss without prejudice. (ECF No. 72.)

By January 2021, however, the parties were unable to consummate their settlement. (*See* ECF No. 75.) Defendants then sought leave to file motions to dismiss a second time, which the Court subsequently granted and issued a briefing schedule. (*Id.*; ECF No. 76.) After a series of extensions, the parties filed their respective briefing on the instant motions in May 2021: the Town, the Town Board, Doles, Cardone, Bingham, Colon, McGinn, and Schwartz their notice of motion (ECF No. 85), memorandum in support ("Town Defendants' Motion," ECF No. 87), declaration

with accompanying exhibits (Dorfman Decl., ECF No. 86), and reply ("Town Defendants' Reply" ECF No. 92); McQuade his notice of motion (ECF No. 88), memorandum in support ("McQuade Motion," ECF No. 89), declaration with accompanying exhibits (Randazzo Decl., ECF No. 90), and reply ("McQuade Reply" ECF No. 93); and Highview its response in opposition ("Response in Opposition," ECF No. 91).

## LEGAL STANDARD

### I.  Federal Rule of Civil Procedure 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already*, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists. *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009).

When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Id.* at 143. But "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

### II.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's

favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

In total, Highview seemingly asserts eleven causes of action against Defendants:

(1) 42 U.S.C. § 1983 claim for alleged due process violations challenging the Town's moratorium based on it exceeding its police powers and zoning authority, seeking injunctive relief;

(2) New York Constitution and Common Law claim for alleged due process violations challenging the Town's moratorium based on it exceeding its police powers and zoning authority, seeking declaratory and injunctive relief;

(3) 42 U.S.C. § 1983 claim for alleged violations of the Equal Protection Clause challenging the Town's moratorium and denial of Highview's exemption/variance application, seeking injunctive relief;

(4) FHA claim for alleged discrimination against Hassidic Jews for making housing "unavailable" on the basis of religion, seeking injunctive relief;

(5) FHA claim for alleged retaliation against the Hasidic Jewish communities' right to available housing, seeking injunctive relief;

(6) Claim under the U.S. and New York Constitutions for alleged due process violations resulting from deprivations of vested property interests by the Town's moratorium and zoning amendments, seeking declaratory and injunctive relief;

(7) 42 U.S.C. § 1983 claim for alleged due process violations resulting from deprivations of vested property interests by the Town's moratorium and denial of Highview's exemption/variance application, seeking monetary damages;

(8) Claim without specified legal basis alleging that the Accessory Apartment law is an exclusionary zoning practice against Hasidic Jewish communities, seeking injunctive relief;

(9) Claim without specified legal basis alleging that the zoning amendments are exclusionary zoning practices against Hasidic Jewish communities, seeking injunctive relief;

(10)    42 U.S.C. § 1983(3) claim for alleged conspiracy to deprive Highview of the equal protection of laws on the basis of religion, seeking injunctive relief; and

(11)    Takings Clause claim for alleged unconstitutional taking through the Accessory Apartment law and zoning amendments, seeking monetary relief.

 (Compl. at 49–72.) Highview bases its eleven causes of action on several alleged adverse actions by Defendants, including the enactment of the moratorium, denial of its exemption/variance application to the moratorium, the Accessory Apartment law, and the zoning amendments. (*Id.*)

Defendants seek to dismiss Highview's claims for lack of subject matter jurisdiction based on mootness, ripeness, and standing, as well as for failure to state a claim. (Town Defs.' Mot. at 23–36; McQuade Mot. at 9–10.) Defendants also argue that the individual Defendants have both absolute legislative immunity and qualified immunity. (Town Defs.' Mot. at 18–20; McQuade Mot. at 5–7.) Alternatively, Defendants argue that the Court should abstain from entertaining Highview's claims under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because the pending Article 78 action involves substantially the same legal issues presented in the instant case. (Town Defs.' Mot. at 20–23; McQuade Mot. at 7–9.)

Accordingly, the Court must first address Defendants' challenge to subject matter jurisdiction and will only analyze whether Highview fails to state a claim if the Court has subject matter jurisdiction over this case. *See Brokamp v. James*, --- F. Supp. 3d ---, No. 21-CV-389, 2021

WL 5444277, at *2 (N.D.N.Y. Nov. 22, 2021) ("Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." (citations omitted)).

## I.     Highview's Causes of Action 8 and 9

Before addressing the Defendants' arguments on subject matter jurisdiction, the Court first notes that the Complaint fails to specify the legal basis for claims 8 and 9 (*i.e.*, whether they are federal or state claims, and whether they have a statutory or common law basis). These two claims allege that the Town's Accessory Apartment law and zoning amendments constitute exclusionary zoning practices against Hasidic Jewish communities. (*See* Compl. ¶¶ 301–331.) Highview also fails to clarify their legal basis in its response in opposition. For the Court to properly analyze the merits of the parties' arguments relevant to these asserted causes of action or claims, the Court must necessarily determine the legal basis under which it will analyze them.

Under Federal Rule of Civil Procedure 8, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). The purpose of Rule 8(a) "is to provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial." *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003). "Dismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Here, throughout claims 8 and 9, Highview refers to the Town's Accessory Apartment law and zoning amendments as "exclusionary zoning" practices that Defendants allegedly designed to exclude Hasidic Jewish communities. (*See* Compl. ¶¶ 301–331.) Generally, federal claims for exclusionary or discriminatory zoning practices are asserted under the FHA. *See Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 426 (S.D.N.Y. 2005) ("The phrase 'otherwise make unavailable,'

13

as it is used within the FHA, has been interpreted to reach a wide variety of discriminatory housing practices, including exclusionary or discriminatory zoning decisions. (quoting *LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 424–25 (2d Cir. 1995)), *aff'd,* 212 F. App'x 38 (2d Cir. 2007). That is because, as the United States Supreme Court has previously explained, the FHA "was enacted to eradicate discriminatory practices" within the housing sector, "includ[ing] zoning laws and other housing restrictions that function unfairly to exclude minorities from certain neighborhoods without any sufficient justification." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.,* 576 U.S. 519, 539 (2015).

In fact, "'the prohibition against making a residence unavailable has been applied to situations where government agencies take actions that prevent construction of housing when the circumstances indicate a discriminatory intent or impact against anticipated future residents who are members of a class protected'" under the FHA. *Lopez v. City of Dallas*, No. 3:03 Civ. 2223–M, 2004 WL 2026804, \*5–\*6, (N.D. Tex. Sept. 9, 2004) (quoting *Arbor Bend Villas Hous., L.P. v. Tarrant County Hous. Fin. Corp.*, No. 4:02 Civ. 478–Y, 2002 WL 1285564, \*3 (N.D. Tex. June 6, 2002)); *see also Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 45–46 (2d Cir. 2002) (noting that the FHA applies to municipal zoning decisions); *Comer v. Cisneros*, 37 F.3d 775, 789 (2d Cir.1994) (noting that Congress intended § 3604 to reach a broad range of activities that have the effect of denying housing opportunities to a member of a protected class, including not only persons who are directly involved in the real estate business, but also those who directly affect the availability of housing, such as state or local governments) (collecting cases).

Accordingly, the Court construes Highview to assert claims 8 and 9 under the FHA, particularly 42 U.S.C. § 3604 based on the facts alleged. The Court finds that Highview's allegations and the language contained therein provide sufficient fair notice to Defendants with

respect to the legal basis of these claims such that the relevant allegations are not "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised," so as to warrant dismissal. *Salahuddin,* 861 F.2d at 42.

## II.   Standing

### A.   Standing to Rest Claims on Third Parties

The Court first addresses Defendants' arguments concerning Highview's standing to bring this case on behalf of a third party. Defendants argue that Highview may not rest its claims on what it speculates will be the effect of the challenged laws on the Hasidic Jewish community. (Town Defs.' Mot. at 27 (quoting *Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 997 F. Supp. 340, 349 (E.D.N.Y. 1998) ("As a rule, a party must assert his or her own legal rights and interests, and cannot rest the claim to relief on the legal rights or interests of third parties. . . . There is no reason that town residents aggrieved over a zoning law . . . cannot assert their own rights.").) The Court agrees.

A review of the Complaint reveals that the main premise behind Highview's asserted causes of action is that Defendants' adverse actions against Highview were motivated by a discriminatory animus against "the Hasidic Jewish community." (*See, e.g.*, Compl. ¶ 1 ("The Town . . . is engaged in a long-standing campaign to exclude or substantially limit the Hasidic Jewish community from seeking housing in the Town.); *id.* ¶ 8 ("The Town . . . persists in its discriminatory campaign against [Highview] and the Hasidic Jewish community."); *id.* ¶ 17 ("[This litigation challenges the Town's use of the invalid Moratorium Law and adoption of the Zoning Law Amendments to thwart [Highview's] approved project, in all practical effect, and make housing unavailable to the Hasidic Jewish community."). In view of the above, the Complaint is unclear whether Highview, a developer and limited liability corporation organized

and existing under the laws of New York with no religious affiliation, is asserting its claims on

behalf of a third party: a member of the Hasidic Jewish community.

Generally, a plaintiff may not rest his claims to vindicate the constitutional or statutory

rights of third parties. *See Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955

(1984); *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 80, (1978); *Singleton

v. Wulff*, 428 U.S. 106, 113–14 (1976); *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Kane v. Johns–

Manville Corp.*, 843 F.2d 636, 643–44 (2d Cir. 1988).

As the United States Supreme Court has explained:

Federal courts must hesitate before resolving a controversy, even one within their
constitutional powers to resolve, on the basis of the rights of third persons not
parties to the litigation. The reasons are two. First, the courts should not adjudicate
such rights unnecessarily, and it may be that in fact the holders of those rights either
do not wish to assert them, or will be able to enjoy them regardless of whether the
in-court litigant is successful or not. . . . Second, third parties themselves usually
will be the best proponents of their own rights. The courts depend on effective
advocacy, and therefore should prefer to construe legal rights only when the most
effective advocates of those rights are before them.

*Singleton*, 428 U.S. at 113–14 (internal citations omitted); *accord Duke Power Co.*, 438 U.S. at

80.

Based on these considerations, the Supreme Court has "narrowly limited the circumstances

in which one party will be given standing to assert the legal rights of another." *Duke Power Co.*,

438 U.S. at 80. A plaintiff may assert a claim on behalf of third parties only where (1) the third

parties have suffered an "injury in fact," (2) the plaintiff has a "close relation" to the third parties

such that the plaintiff will effectively represent the third parties' interests, and (3) the third parties

are hindered in their ability to protect their own interests. *See Powers v. Ohio*, 499 U.S. 400, 410–

11 (1991); *Joseph H. Munson Co.*, 467 U.S. at 956; *Singleton*, 428 U.S. at 114–15; *Kane*, 843 F.2d

at 643–44.

Here, to the extent that Highview asserts claims seeking to assert the rights of "the Hasidic Jewish community," Highview lacks standing to bring such claims because nowhere in its Complaint does it include allegations satisfying the three requirements outlined above. To begin, even when construing the Complaint in the light most favorable to it, Highview fails to sufficiently identify any members of "the Hasidic Jewish community" whom it seeks to assert their rights. Consequently, Highview fails to allege in its Complaint which third parties from the Hasidic Jewish community suffered an injury in fact, if any.

Even had the Court determined that the Complaint sufficiently identified the third parties, the Complaint still fails to allege what is Highview's "close relation" to those third parties such that Highview will effectively represent their interests. "A close relation supporting third-party standing exists when 'the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter.'" *Fenstermaker v. Obama*, 354 F. App'x 452, 455 (2d Cir. 2009) (quoting *Singleton v. Wulff,* 428 U.S. 106, 115 (1976)); *see also Eisenstadt v. Baird,* 405 U.S. 438, 445 (1972) ("[T]he relationship between Baird and those whose rights he seeks to assert is not simply that between a distributor and potential distributees, but that between an advocate of the rights of persons to obtain contraceptives and those desirous of doing so.").

Here, nowhere in its Complaint does Highview allege, for example, that (1) it is developing the Henry Farms Project exclusively for Hasidic Jewish communities; (2) the homes within the Henry Farms Project are specifically advertised for Hasidic Jewish communities; or (3) people who have purchased homes to be developed within the Henry Farms Project are members of the Hasidic Jewish community. Additionally, insofar as Highview is alleging that members of the Hasidic Jewish community could *potentially* purchase homes within the Henry Farms Project, such

17

allegation would still be insufficient because parties may not premise third-party standing "on relationships with hypothetical future clients." *Fenstermaker*, 354 F. App'x at 455 (citing *Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004) ("The attorneys before us do not have a 'close relationship' with their alleged 'clients'; indeed, they have no relationship at all.").

And finally, nowhere does Highview allege in its Complaint that these third parties from the Hasidic Jewish community whom it seeks to assert their rights are "hindered in their ability to protect their own interests." Accordingly, Highview may not assert its claims in an attempt to vindicate the constitutional or statutory rights of any third party.

B.      *Standing to Assert Any Claims Based on the Accessory Apartment Law*

Further, the Court is of the view that Highview cannot assert any of its claims based on the Town's Accessory Apartment law because Highview fails to allege any injury in fact. A review of the Complaint and the documents referenced therein indicate that the Town's Accessory Apartment law restricts the ability of property owners to add accessory apartments to their residences "to meet the special housing needs of senior citizens, single persons and small households," among others. (Compl. ¶ 199.) Highview alleges that this law limits the size of an accessory apartment to no more than 750 square feet or 30% of the square footage of the original home, which ultimately "is designed to make accessory apartments to the Hasidic Jewish community—as a result of their religious and cultural practices, [as] Hasidic Jews generally have larger families and require more housing space[.]" (*Id.* ¶ 200.) However, by its terms, this law applies *only* to owners occupying a single-family dwelling, and not to developers of contemplated homes such as Highview. (*Id.*, Ex. 18 at 4 § 57-21.) In other words, as the Accessory Apartment law does not apply to it, logically it follows that Highview has not suffered any injury in fact and therefore lacks standing to assert its claims based on that law.

Further, insofar as Highview argues that the Accessory Apartment law "denie[s] benefits to entities such as [itself]," Highview would still lack standing because "[t]here is no redressability, and thus no standing where (as in the case here) any prospective benefits depend on an independent actor[—namely, a prospective homeowner—]who retains broad and legitimate discretion the courts cannot pressure either to control or to predict." *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.,* 465 F.3d 1123, 1125 (9th Cir. 2006) (internal quotation marks omitted); *accord Butler v. Obama*, 814 F. Supp. 2d 230, 241 (E.D.N.Y. 2011). And moreover, even assuming that Highview sufficiently alleges that the Accessory Apartment law caused an injury in fact to members of the Hasidic Jewish community, Highview would still not be able to rest its claims on such law for failure to satisfy the elements required to assert claims on behalf of third parties. Therefore, Highview may not assert any claims based on the Town's Accessory Apartment law for failure to allege any injury in fact.

Accordingly, the Court dismisses claims 3, 4, 5, 8, 9, and 10 in the Complaint. (*See* Compl. ¶¶ 249–50 (claim 3) ("Defendants have taken numerous unlawful actions to prevent final approval and construction of the Project . . . based upon their discriminatory animus targeted against Hasidic Jews."); *id.* ¶¶ 260–61 (claim 4) ("Defendants, by their continuing conduct, acts, and legislative enactments that prevent the final approval, construction, sale, and use of the [Highview's] projects, have intentionally discriminated against [Highview] by making housing 'unavailable' within the Town . . . on the basis of religion in violation of 42 U.S.C. § 3604 [by] . . . preclud[ing] Hasidic Jewish individuals from moving into the Town by virtue of preventing construction and completion of the Project, and other projects in the Town."); *id.* ¶ 277 (claim 5) ("As a direct result of these unlawful actions by Defendants, even though the Henry Farms project received all of its final land use approvals, except for those intentionally delayed by the Town Board as a part of its

discriminatory scheme, the Town has repeatedly discriminated against the development and thereby has intentionally interfered with the Hasidic Jewish communities' right to available housing. Defendants have further sought to coerce and intimidate those who support the Hasidic Jewish community in the hopes of preventing the development of appropriate housing for the community."); *id.* ¶¶ 302–03 (claim 8) ("The Accessory Apartments Law restricts the use of accessory apartments in a manner that will disproportionately affect Hasidic Jews who live in the Town. The Accessory Apartment Law is designed to exclude Hasidic Jews from the Town."); *id.* ¶ 322 (claim 9) ("The Zoning Law Amendments are designed to exclude Hasidic Jews from the Town."); *id.* ¶ 334 (claim 10) ("Defendants have engaged in a concerted scheme carried out by political allies, including but not limited to Defendants Cardone, McGinn, and Colon who are alleged to be involved with or supported by United Monroe, and the Town Board under their control to engage in a pervasive and wide-ranging scheme to keep the Hasidic Jewish community out of the Town."). The Court further dismisses claim 11 insofar as it asserts an unconstitutional taking through the Accessory Apartment law. (*See id.* ¶¶ 345–47, 352–53.)

## III.  Ripeness

Defendants next contend that all of Highview's claims based on the zoning amendments are unripe for this Court to have subject matter jurisdiction over them. (Town Defs.' Mot. at 25–27.) Defendants argue that Highview's challenges to these amendments are entirely speculative and unripe because the Town has never applied these laws to Henry Farms Project, nor has Highview ever sought a variance. (*Id.* at 25–26.) The Court agrees.

"To be justiciable, a cause of action must be ripe—it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)). "A claim is not ripe if it depends upon 'contingent future events that may or may not

occur as anticipated, or indeed, may not occur at all.'" *Id.* (quoting *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 580–81 (1985)); *see also Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002) ("The ripeness requirement prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution.").

Claims involving a land use decision will be unripe "until the government charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019). That is because "[a] final decision is 'a definitive position on the issue that inflicts an actual, concrete injury.'" *R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003), *aff'd* 115 F. App'x 465 (2d Cir. 2004) (quoting *Williamson*, 473 U.S at 193). "The ripeness requirement of *Williamson*, although announced in a takings context, has been extended to equal protection and due process claims asserted in the context of land use challenges." *Dougherty*, 282 F.3d at 88 (collecting cases). "[C]ourts in this circuit have also extended it to FHA claims." *Safe Harbor Retreat, LLC v. Town of E. Hampton, N.Y.*, No. CV 14-2017 LDW GRB, 2015 WL 918771, at *5 (E.D.N.Y. Mar. 2, 2015), *aff'd*, 629 F. App'x 63 (2d Cir. 2015).

"A final decision exists when a development plan has been submitted, considered and rejected by the governmental entity with the power to implement zoning regulations." *S & R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008). Even if a plan has been submitted and rejected, a claim is not ripe until the "property owner submit[s] at least one meaningful

application for a variance." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005). Four considerations undergird the requirement that plaintiffs seek a variance before requesting relief from a federal court: (1) the need to develop a full record; (2) "only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel;" (3) "a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes," thereby enforcing "the longstanding principle that disputes should be decided on non-constitutional grounds wherever possible;" and (4) "[r]equiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Id.* (citations omitted).

Here, Defendants are correct that the Complaint and the documents referenced therein indicate that the zoning amendments have not been applied to the Henry Farms Project and that Highview has yet to apply for a variance. (Town Defs.' Mot. at 26–27.) In fact, by raising the futility exception in its response, Highview itself concedes that it has it has not sought a variance from the zoning amendments. (*See* Resp. in Opp'n at 19–20.)

Courts recognize one exception permitting federal court review of a non-final decision—"if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile." *Murphy*, 402 F.3d at 349. This occurs when "a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Id.* Courts have interpreted this futility exception narrowly. *Missere v. Gross*, 826 F. Supp. 2d 542, 555 (S.D.N.Y. 2011). "Although the precise contours of the futility exception are not well-defined, courts in the Second Circuit have recognized that mere allegations of open hostility are not sufficient to invoke the futility exception." *Norwood v. Salvatore*, No. 12-cv-1025, 2015 WL 631960, at *5 (N.D.N.Y.

Feb. 13, 2015) (internal citations and quotations omitted); *Osborne v. Fernandez*, No. 06-cv-4127, 2009 WL 884697, at \*6 (S.D.N.Y. Mar. 31, 2009), *aff'd*, 414 F. App'x 350 (2d Cir. 2011) (rejecting futility argument based on allegations that "defendant decisionmakers were hostile to plaintiffs' proposed development or act[ed] in bad faith"). It is a "high standard" met only "when the government's actions are so unreasonable, duplicative, or unjust as to make the conduct farcical." *Sherman v. Town of Chester*, 752 F.3d 554, 563 (2d Cir. 2014).

Here, Highview contends that the zoning amendments require it to "resubmit for a new subdivision approval[,]" which "is precisely the kind of repetitive and unfair procedural abuse" that the futility exception seeks to prevent. (Resp. in Opp'n at 19.) Highview compares the instant facts to those in *Sherman v. Town of Chester*, 752 F.3d 554, (2d Cir. 2014), in which the Second Circuit found that the futility exception applied where the Town of Chester had "engaged in a war of attrition" after "repeatedly chang[ing] the zoning laws and rejected [the] plaintiff's proposal, forcing [him] to spend millions of dollars over the course of 10 years." (Resp. in Opp'n at 19 (citing *Sherman*, 752 F.3d at 562.).) But the Court disagrees with Highview because the facts in *Sherman* and those at issue here are not comparable.

First, in *Sherman*, the Town of Chester enacted new zoning regulations *five* times over a five-year period, which required the plaintiff to submit new development plans each time. Here, in contrast, the Town only enacted zoning amendments *once*. *See Sherman*, 752 F.3d at 557. Second, in *Sherman*, the Town of Chester announced a moratorium on development that applied only to the plaintiff. *Id.* at 558. Unlike in *Sherman*, the moratorium implemented here did not exclusively apply to just Highview. And third, in *Sherman*, the Town of Chester required the plaintiff to resubmit studies that had already been completed and further required him to first pay $25,000, and then later an extra $40,000, in fees before he could even obtain a hearing. *Id.* at 557.

Here, at best, Highview alleges that the zoning amendments "will require [it] to return to the [Town Board] for new approvals, after having already received final [conditional] subdivision approval" and "to prepare three separate subdivision plans," including a "conservation plan, a conventional subdivision plan, and a conceptual cluster plan[,]" all of which will be "time consuming and expensive." (Compl. ¶¶ 211–12.) However, as the Second Circuit itself noted in *Sherman*: "[e]very delay in zoning approval does not ripen into a federal claim." *Sherman*, 752 F.3d at 563.

Therefore, even when drawing all inferences in Highview's favor, the Complaint fails to allege that Defendants' actions "are so unreasonable, duplicative, or unjust as to make the conduct farcical." *Sherman*, 752 F.3d at 563. As such, the Court is of the view that Highview has not met its burden in establishing the "high standard" of the futility exception. Further, Highview's own allegations fail to show "that the [Town Board] lacks discretion to grant the relief it seeks." *Lost Trail LLC v. Town of Weston*, 289 F. App'x 443, 445 (2d Cir. 2008) (summary order). If anything, the opposite is true. (*See* Compl. ¶¶ 214–15 (alleging that Zoning Law § 57-21.1(b)(1) gives the Town Board "seemingly unbridled discretion" in evaluating the conservation, cluster, and conventional plans[.]").)

As a result, "[a]bsent such allegations, the noted disagreement [between Highview and the Town] is not enough, by itself, to demonstrate futility." *Lost Trail*, 289 F. App'x at 445. Thus, the Court concludes that Highview's claims based on the zoning amendments are unripe. Accordingly, the Court dismisses claim 6 insofar as it alleges a due process violation resulting from the zoning amendments (*see* Compl. ¶¶ 284–85, 290.), and the remainder of claim 11 that alleges an unconstitutional taking through the zoning amendments (*see id.* ¶¶ 348–52, 354).

## IV.    Mootness

Defendants next contend that Highview's claims based on the moratorium are moot because the moratorium expired after the Town adopted the zoning amendments. (Town Defs.' Mot. at 23–24.) The Court agrees.

"Mandated by Article III's 'case or controversy' requirement, the mootness doctrine prevents federal courts from hearing matters that no longer present an actual dispute between parties." *Assoc. Gen. Contractors of Connecticut, Inc. v. City of New Haven*, 41 F.3d 62, 65 (2d Cir. 1994). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Constitutional challenges to statutes are routinely found moot when a statute is amended" or expires. *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 61 (2d Cir. 1992); *see also Assoc. Gen. Contractors, Inc.*, 41 F.3d at 65–66 (finding case mooted by expiration of the statute). "[D]eference to the legislative body's decision to amend is the rule, not the exception. *See Harrison & Burrowes Bridge Constructors*, 981 F.2d at 61; *see also Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 377 (2d Cir. 2004) ("Mindful of the deference due the legislative body, we are hesitant to hold that a significant amendment or repeal of a challenged provision that obviates the plaintiff's claims does not moot a litigation, absent evidence that the defendant intends to reinstate the challenged statute after the litigation is dismissed, or that the municipality itself does not believe that the amendment renders the case moot."); *Catanzano v. Wing*, 277 F.3d 99, 107–08 (2d Cir.2001) (holding no error in district court's issuance of an injunction against law that already had expired where efforts were underway to reenact the provision, but nevertheless finding case moot because efforts to reenact the law were abandoned while case was on appeal).

Here, as Defendants correctly point out, the moratorium expired upon the adoption of the updates to its CMP and the zoning amendments. (*See* Compl., Ex. 14 at 9 ("Section 6. Expiration of moratorium. This Local Law shall expire without further action of the Town Board upon adoption of a comprehensive plan update and related zoning amendments, or three (3) months following the effective date hereof, whichever shall occur first, and thereafter shall be of no force or effect.").

Highview nonetheless contends that Defendants have not met their heavy burden in establishing mootness here because they fail to demonstrate how there is no reasonable expectation that the alleged violation will recur. (Resp. in Opp'n at 16–17.) In other words, Highview seems to argue that the expiration of the moratorium was a "voluntary termination of allegedly illegal conduct." (*Id.*)

To be sure, when a challenged statute or regulation expires during litigation, "that does not necessarily moot the case" when the plaintiffs can show that they "remain under a constant threat that government officials will use their power to reinstate the challenged restrictions." *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (internal quotation marks omitted). But this is not a case where the challenged conduct was voluntarily withdrawn or altered during litigation. *See, e.g.*, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68–69 (2020) (holding that challenge to executive order restricting attendance at religious services in "red" and "orange" zones was not moot simply because subsequent executive order reclassified the areas as "yellow"). Instead, this is a case where the challenged statutes or regulations expired by their own terms, including the intervening passage of legislation. (*See* Compl., Ex. 14 at 9.) As such, the Court is unpersuaded that there is "a reasonable expectation of recurrence" in this case. *See 36 Apartment Assocs., LLC v. Cuomo*, 860 F. App'x 215, 217 (2d Cir. 2021) (summary order) (quoting *Russman*

26

*v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 120 (2d Cir. 2001); *accord Lewis v. Cuomo*, No. 20-CV-6316 CJS, 2021 WL 3163238, at *8 (W.D.N.Y. July 27, 2021).

Nonetheless, Highview seems to contend that its claims are not moot because it seeks not only declaratory or injunctive relief, but also monetary damages. (*See* Resp. in Opp'n at 16–17; *see also id.* at 15 ("Here, [Highview] seeks both injunctive relief and damages resulting from the Town's multiple violations of federal constitutional law and the [FHA]."); *but see* ECF No. 41 at. 3 (Highview's response to Defendants' request for pre-motion conference and leave to file first motion to dismiss) ("[Highview]'s state law claims seek injunctive, not monetary relief  . . . .").)

It is true that "[c]laims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable." *Dean v. Blumenthal*, 577 F.3d 60, 66 (2d Cir. 2009); *see also Srabyan by Srabyan v. New York*, No. 20CV3137NGGRML, 2022 WL 866851, at *2 (E.D.N.Y. Mar. 23, 2022) (holding that claims seeking monetary relief survive and dismissing related claims seeking declaratory and injunctive relief as moot). However, as Defendants correctly assert, failure to comply with the notice of claim requirements under General Municipal Law 50-e and 50-h (and New York Town Law § 67 (Presentation of claims for torts: actions against towns) for that matter), "ordinarily requires a dismissal for failure to state a cause of action" of state law claims. *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999); *see also Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y.2003) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action.").

Here, nowhere in the Complaint does Highview allege that it complied with the notice of claim requirements such that it may assert state law claims seeking damages from Defendants. In

fact, Highview failed to respond to Defendants' relevant arguments in its response in opposition. *See Williams v. Mirabal*, No. 11 Civ. 336 (JMF), 2013 WL 174187, at *2 (S.D.N.Y. Jan. 16, 2013) ("A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'") (quoting *Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)).

Accordingly, the Court dismisses claims 1, 2, and 6, all claims based on the moratorium for which Highview seeks declaratory or injunctive relief, or both. Thus, having determined Defendants' arguments regarding subject matter jurisdiction, Highview's only surviving claim is claim 7— a § 1983 claim for alleged due process violations resulting from deprivations of vested property interests by the Town's moratorium and denial of Highview's exemption/variance application, seeking monetary damages;

## V.    Individual Defendants Sued in Their Official Capacity

Next, before addressing Highview's only surviving claim, the Court agrees with Defendants that the Town Board and all individual Defendants in their official capacity must be dismissed from this action. (Town Defs.' Mot at 35.)

To begin, "agencies of a municipality are not suable entities because they are 'merely administrative arms of a municipality, [and] do not have a legal identity separate and apart from the municipality." *MetroPCS New York LLC v. City of Mount Vernon*, 739 F. Supp. 2d 409, 419 (S.D.N.Y. 2010); *see also T-Mobile Northeast LLC v. Town of Ramapo*, 701 F. Supp. 2d 446, 463 n. 5 (S.D.N.Y. 2009) (holding that Town Board is not an independent legal entity). Therefore, the Court dismisses the Town Board from this action.

Further, official capacity claims against individual Town employees "represent only another way of pleading an action against" the Town. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978); *see also Malay v. City of Syracuse*, 638 F. Supp. 2d 303, 311

(N.D.N.Y. 2009) ("[C]laims against a government employee in his official capacity are treated as a claim against the municipality.") (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Therefore, the Court dismisses Doles, Cardone, Bingham, Colon, McGinn, McQuade, and Schwartz in their official capacity from this action.

## VI.   Individual Defendants Sued in Their Individual Capacity

Next, the Court agrees with Defendants that Cardone, McGinn, Colon, and McQuade in their individual capacity must be dismissed because they are entitled to immunity from this suit. (Town Defs.' Mot. at 18–20; McQuade Mot. at 5–7.)

### A.   *Legislative Acts*

First, public servants acting in their legislative capacity are immune from civil liability. *See Rini v. Zwirn*, 886 F. Supp. 270, 280 (E.D.N.Y. 1995); *Star Distributors, Ltd. v. Marino*, 613 F.2d 4, 6 (2d Cir. 1980). This immunity has been extended to local legislative boards. *See Orange Lake Assocs., Inc. v. Kirkpatrick*, 21 F.3d 1214, 1219 (2d Cir. 1994)); *Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 73 (2d Cir. 1992). Absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity," *Bogan v. Scott-Harris,* 523 U.S. 44, 54 (1998), regardless of an official's motive or intent. *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007).

Here, because enactment of the moratorium, the Accessory Apartment, and the zoning amendments were purely legislative acts, Cardone, McGinn, Colon, and McQuade are absolutely immune from suit. *See Kirkpatrick*, 21 F.3d at 1224 (legislative immunity attached to individual members of local town board for their adoption of a master plan and zoning law amendments); *Bloomingburg Jewish Educ. Ctr. V. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 492 (S.D.N.Y. 2015) (granting the individual Town Boardmembers' motion to dismiss plaintiff's equal protection claims stemming from the Boardmembers' votes in favor of a moratorium on the issuance of all building permits within the Town as passage of the moratorium was a legislative act for which the

Boardmembers are absolutely immune from suit); *Livant v. Clifton*, 334 F. Supp. 2d 321, 326 (E.D.N.Y. 2004) ("Here, the Board's actions in holding a hearing, voting, and approving a resolution which authorized the removal of a nuisance . . . are clearly legislative in nature.").

     *B.*     *Non-Legislative Acts*

However, absolute legislative immunity does not shield lawmakers acting in an administrative or enforcement role. *See Jessen v. Town of Eastchester*, 114 F.3d 7 (2d Cir. 1997); *State Emples. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 84 (2d Cir. 2007). Nonetheless, such lawmakers may still enjoy qualified immunity from suit under certain circumstances.

Qualified immunity "is an entitlement not to stand trial under certain circumstances. Such entitlement is an *immunity from suit* rather than a mere defense to liability . . . which 'is effectively lost if a case is erroneously permitted to go to trial.'" *Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985) (emphasis in original). "The Supreme Court 'repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Chamberlain v. City of White Plains*, 12-CV-5142 CS, 2013 WL 6477334 (S.D.N.Y. Dec. 10, 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231(internal quotation marks omitted). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kid*d, 131 S. Ct. 2074, 2085 (2011) (citation and internal quotation marks omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable

official would have understood that what he is doing violates that right.'" *al-Kidd*, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"The Supreme Court's recent repeated unanimous awards of qualified immunity emphasize the narrow circumstances in which government officials may be held personally liable for their actions in suits for money damages." *Turkmen v. Hasty*, 789 F.3d 218, 281 n.26 (2d Cir. 2015). "The dispositive question is whether the violative nature of *particular* conduct is clearly established . . . [and] must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (emphasis in original). "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson*, 483 U.S. at 639).

Here, it seems that the only other non-legislative act challenged in the Complaint is in relation to the individual Defendants' vote to deny Highview's exemption/variance application from the moratorium. (*See* Resp. in Opp'n at 31 ("[Highview] alleges that Cardone, McGinn, and McQuade voted to deny [Highview's] Exemption/Variance Application based upon religious animus, violating [Highview's] civil rights. . . .That is not legislative activity to which immunity could attach.").) However, because Colon did not participate in such vote (*see* Compl. ¶¶ 177, 179), then Highview cannot raise a claim against him in his individual capacity for lack of personal involvement. *See Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000) ("A defendant in a § 1983 action may not be held responsible unless he was personally involved in the alleged constitutional violations.").

As to the remaining individual Defendants, the Court concludes that, even when construing the Complaint in its favor, Highview fails to allege that either Cardone, McGinn, or McQuade violated Highview's "clearly established rights" in denying its application for exemption/variance from the moratorium. Defendants are correct that insofar as Highview alleges that their voting to deny its application was motivated by religious animus, such allegations fail because, as explained in detail above, neither does Highview have any religious affiliation nor can it assert any claims on behalf of third parties. (Town Defs.' Mot at 20; McQuade Mot. at 6–7.)

But perhaps most fatally, Highview fails to cite to any binding legal authority establishing that a lawmaker's denial of an exemption/variance application to a developer could constitute the violation of a "clearly established right" of *that developer* such that the lawmaker would understand that what he or she is doing violates that right. *See, e.g.*, *33 Seminary LLC v. City of Binghamton*, 120 F. Supp. 3d 223, 255 (N.D.N.Y. 2015) ("[E]ven assuming *arguendo* that Plaintiffs had established that Defendants violated their constitutional rights, Plaintiffs have not identified a clearly established right that Defendants are alleged to have violated. Their sole conclusory statement that "the individual defendants' actions were arbitrary and capricious . . . and therefore violated plaintiffs' rights to substantive and procedural process" is insufficient to establish that Defendants unreasonably violated a clearly established right of Plaintiffs."), *aff'd sub nom. 33 Seminary LLC v. The City of Binghamton*, 670 F. App'x 727 (2d Cir. 2016).

Accordingly, the Court dismisses Colon in his individual capacity from this action due to Highview's failure to allege personal involvement, and also dismisses Cardone, McGinn, and McQuade in their individual capacity from this action on qualified immunity grounds. As such, Highview's only surviving claim is solely against the Town.

**VII.**   **Abstention Under *Colorado River***

However, after reviewing the facts and legal issues raised by Highview's only surviving claim against the Town and the pending State Action, the Court agrees with Defendants that it must abstain from entertaining such claim under *Colorado River*.

Abstention under *Colorado River* rests on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817. To determine whether abstention is warranted under *Colorado River*, courts should consider:

> (1) whether the controversy involves a *res* over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal actions will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene Cnty.*, 239 F.3d 517, 522 (2d. Cir. 2001) (citations omitted). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818–19.

But before considering the *Colorado River* factors, courts must first determine "whether the state and federal proceedings are indeed parallel, *i.e.*, whether substantially the same parties are litigating the same issues in a state forum." *Mouchantaf v. Int'l Modeling & Talent Ass'n*, 368 F. Supp. 2d 303, 306 (S.D.N.Y. 2005). To be parallel, "federal and state suits need not be identical in every aspect." *AMNEX, Inc. v. Rowland*, 25 F. Supp. 2d 238, 244 (S.D.N.Y. 1998) (citing *Weiser v. Koch*, 632 F. Supp. 1369, 1386 (S.D.N.Y. 1986) (cases parallel where "the crucial threshold issue" of whether plaintiffs had a property interest under state law would be "decided imminently.")

33

Here, the Court is of the view that the parties in both the instant case and those in the State Action are substantially the same because, in both actions, Highview is the plaintiff and the Town is the defendant. (*See* Dorfman Decl., Ex. D at 2; *id.*, Ex. F at 2.) Further, a review of Highview's amended petition in the State Action shows that "the crucial threshold issue" Highview raises in the State Action is the same one it raises through claim 7: whether it has a vested property interest and whether it should be exempt from the new zoning amendments. (*Compare* Compl. ¶ 294 ("The denial of [Highview's] Exemption/Variance Application was unconstitutional because [Highview's] property rights had vested and the deprivation of those rights through the denial of [Highview's] Exemption/Variance Application was arbitrary, capricious, and contrary to law."); *with* Dorfman Decl. Ex. F ¶¶ 59–65 (alleging that the Town Board arbitrarily and capriciously enforced the moratorium and denied its exemption/variance application); *and id.*, Ex. F ¶¶ 66–71 ("Based on the foregoing, [Highview] has established the bad faith and dilatory conduct of the Town Board, and is entitled to a judgment declaring that [Highview] has vested rights under a 'special facts exception' for the Henry Farm subdivision approval, and that the Town Board and other-municipal departments and agencies process that subdivision pursuant to the Resolution to allow for the filing of the approved plat.").)

Highview argues that the State Action and the instant case are not sufficiently parallel for the Court to abstain from entertaining claim 7 under *Colorado River* because they involve different rights and remedies. (Resp. in Opp'n at 15.) Specifically, Highview argues that while it seeks monetary damages resulting from the Town's violations of federal constitutional law through claim 7, it only seeks an annulment of the Town's denial of its application on state grounds in the State Action. (*Id.*) But the Court disagrees. *Colorado River* does not require that the federal and state suits be identical in every aspect; instead, all that is needed is that "substantially the same

parties are contemporaneously litigating substantially the same issue in another forum." *Dittmer v. Cnty of Suffolk*, 146 F.3d 113, 118 (2d Cir.1998) (quoting *Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir. 1998)).

Turning to *Colorado River* factors, after due consideration, the Court concludes that the balance of the factors weighs in favor of abstention. "[T]he most important factor in [the Supreme Court's] decision to approve the dismissal [in *Colorado River*] was the 'clear federal policy . . . [of] avoidance of piecemeal adjudication.'" *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983) (quoting *Colorado River*, 424 U.S. at 819). Indeed, "the predominant concern expressed in *Colorado River* and its progeny is the avoidance of piecemeal or purely duplicative litigation and the concomitant waste of judicial resources." *Mouchantaf*, 368 F. Supp. 2d at 307.

Here, that factor—factor 3—weighs heavily in favor of abstention. As noted above, the crucial threshold issue in both the State Action and claim 7 here is whether Highview has a vested property interest and whether it should be exempt from the new zoning amendments. Hence, if the Court proceed to determine the merits of claim 7, then "there is a strong likelihood of needless duplication" of the ongoing State Action. *Chu Trading Co. v. Sara Lee Corp.*, 810 F. Supp. 501, 508 (S.D.N.Y. 1998). And most notably, if the Court were to proceed to determine the crucial threshold issue both here and in the State Action, then such situation would "pose a risk of inconsistent and contradictory results" in both cases. *Bull & Bear Group, Inc. v. Fuller,* 786 F. Supp. 388, 392–93 (S.D.N.Y. 1992) (abstention appropriate where "allowing [the] case to proceed in federal court would pose a risk of inconsistent and contradictory results").

Such risk is further exacerbated by the fact that the State Action is now on appeal before the Appellate Division of the Supreme Court for the Second Department. *See In the Matter of*

*Highview Properties, D.H.F., Inc., respondent, v. Town of Monroe, et al., appellants*., No. 2021-04347, 298/2017, 2022 WL 537268 (N.Y. App. Div. Feb. 23, 2022). Indeed, "[g]iven [this] identity of issues in the state and federal actions, the existence of concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first, which would be prejudicial, to say the least, to the possibility of reasoned decision making by either forum." *Mouchantaf*, 368 F. Supp. 2d at 307.

Additionally, while factors 1 and 2 are neutral, factors 4, 5, and 6 all weigh in favor of abstention. As to factor 4, it is undisputed that Highview filed the State Action first and that it has advanced far ahead of the instant case. As discussed above, while this case is still at the pre-answer stage, the State Action appears to be now on appeal. As such, factor 4 weighs in favor of abstention. As to factor 5, while it is true that federal law provides the rule of decision on the Fourteenth Amendment, state law still controls on the questions of whether Highview possesses a vested property interest and whether the zoning amendments were reasonable and proper. Indeed, Highview itself argued the same in its response in opposition. (*See, e.g.*, Resp. in Opp'n at 22–23 ("In New York, a property right to a land use approval or vests when 'the landowner demonstrates a commitment to the purpose for which the permit was granted by effecting substantial changes and incurring substantial expenses to further the development." (quoting *Town of Orangetown v. Magee*, 88 N.Y.2d 41, 47 (1996)).) Thus, factor 5 weighs in favor of abstention. And lastly, as to factor 6, Highview provides no reason whatsoever for this Court to doubt whether the state procedures are adequate to protect its federal rights.

In sum, after balancing the *Colorado River* factors, the Court concludes that the factors weigh in favor of abstention with respect to claim 7. Therefore, the Court abstains from addressing Highview's only surviving claim and dismisses it accordingly.[3]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss (ECF Nos. 85 and 88) and Highview's Complaint is deemed DISMISSED without prejudice with leave to refile consistent with this Opinion and Order. The Clerk of the Court is directed to terminate the motion at ECF Nos. 85 and 88, and this action.

Dated: June 9, 2022
       White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

---

[3] There is no substantive difference between a stay and dismissal under *Colorado River*. The Supreme Court has noted that "a stay is as much a refusal to exercise federal jurisdiction as a dismissal. When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983); *see also, e.g.*, *Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 77 (2d Cir. 1996) ("There is no difference between a stay and a dismissal for purposes of the *Colorado River* doctrine."); *Abe v. N.Y. Univ.*, 14 Civ. 9323, 2016 WL 1275661 at *10 (S.D.N.Y. Mar. 30, 2016) (" '[T]he *Colorado River* exceptional circumstances test makes no distinction as to whether a dismissal or stay is more appropriate.' "); *Shields v. Murdoch*, 891 F. Supp. 2d 567, 576 n.7 (S.D.N.Y. 2012) ("[T]the Second Circuit has 'rejected any distinction between a stay of federal litigation and an outright dismissal for the purposes of the [*Colorado River*] exceptional circumstances test.' ").